## In re STACK STEEL & SUPPLY CO., Debtor.

### Bankruptcy No. 82–01721.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Feb. 24, 1983.

---

Norman B. Page, Margaret L. Schaaf, Davis, Wright, Todd, Riese & Jones, Seattle, Wash., for Seattle-First Nat. Bank.

Richard R. Beresford, Beresford, Booth & Baronsky, Seattle, Wash., for Donald L. Ginsberg, Trustee.

Sandra L. Cohen, Seattle, Wash., for King County Pros. Atty.

Garard A. Gesinger, Spokane, Wash., for Spokane County Pros. Atty.

## MEMORANDUM ON OBJECTIONS TO CERTAIN CLAIMS

KENNETH S. TREADWELL, Bankruptcy Judge.

This matter came on for hearing as a result of objections made by Seattle-First National Bank (hereinafter, the "bank"), a secured creditor, to the following claims:

1. Claim of Spokane County, Washington for ad valorem property taxes payable in the last half of 1982 in the amount of $12,035.35, and interest and penalty thereon.[1]

2. Claim of King County, Washington for ad valorem property taxes payable in the last half of 1982 in the amount of $27,285.49, and interest and penalty thereon.

3. Claim of Spokane County, Washington for ad valorem property taxes payable for the year 1983 in the amount of

---

1. The proofs of claim originally filed by Spokane County and King County did not claim penalty and interest. The Court has allowed the oral amendment of such claims and the parties' briefs have treated the claims as so amended.

$23,359.20, and interest and penalty thereon.

4. Claim of King County, Washington for ad valorem property taxes payable for the year 1983 in the amount of $56,919.07, and interest and penalty thereon.

## I. BACKGROUND

Under Washington statute, RCW 84.60.-020, a lien is created on the date of assessment, i.e., listing and valuation, of a personal property tax. On June 24, 1981, July 14, 1981, August 6, 1981 and November 23, 1981 the King County assessor listed and valued certain parcels of personal property of Stack Steel & Supply Co. (hereinafter, the "debtor") for taxes payable for the year 1982. On March 31, 1981 and March 26, 1982, the Spokane County assessor listed and valued certain parcels of personal property of the debtor for taxes payable for the years 1982 and 1983, respectively.

On June 11, 1982 the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code (hereinafter, the "Code"). Subsequent to the filing of the petition, the King County assessor listed and valued personal property of the estate for taxes payable for the year 1983. King County asserts that a lien was perfected in its favor on June 22, 1982, the date of its assessment of 1983 personal property taxes.

Both county claimants assert that their pre-petition liens secure claims for taxes, interest and penalty payable *after* the date of the filing of the Chapter 11 petition.

## II. DISCUSSION

This Court will first discuss the tax claims arising out of pre-petition assessments by King and Spokane counties and then discuss the tax claim arising out of the post-petition assessment by King County.

*A. Pre-petition Assessments.*

■ As earlier noted, once property is valued and listed by Washington state taxing authority, that property is encumbered with a tax lien. RCW 84.60.020; *Air Base Housing, Inc. v. Spokane County,* 56 Wash.2d 642, 354 P.2d 903 (1960). However, the bank argues that it would be improper for the Court to grant lien status to the entire amount of 1982-payable taxes pursuant to the counties' pre-petition assessments, and to the 1983 payable tax pursuant to the Spokane County assessment of March 26, 1982, because the assessed entity's assets became property of the estate on June 11, 1982. The bank asserts that the latter half year 1982-payable taxes and all of the 1983-payable Spokane County taxes should be characterized as "incurred by the trustee" pursuant to Code § 503(b)(1)(B)(i) and awarded administrative expense, but not lien status.

■ The Court is of the view that the 1982 and 1983 payable taxes were "incurred" when the debtor's personal property became impressed with the tax liens and that no reduction in status may be deemed to have occurred because of the subsequent filing of the Chapter 11 petition. Under Code § 506(a), allowed claims of creditors secured by liens are secured claims to the extent of the value of the creditors' collateral. Prior to the Code, it was always a fundamental tenet of bankruptcy law that a lien when valid in bankruptcy shall not be impaired in the administration of the bankruptcy estate. *Oppenheimer v. Oldham,* 178 F.2d 386 (5th Cir.1949). And, the Code nowhere contemplates that the filing of a petition in bankruptcy somehow negates the effect of valid, non-preferential liens.[2] Accordingly, the Court concludes that the counties' pre-petition liens validly secure all of the 1982 and 1983 payable taxes which were assessed prior to the filing of the Chapter 11 petition.

---

**2.** Arguably the lien attaching with the March 26, 1982 assessment of 1983-payable taxes may constitute a preference avoidable by the trustee. However, Code § 547(c)(6) expressly excludes from the definition of preferences statutory liens which are not avoidable under Code § 545. See *In re Community Hospital of Rockland County,* 15 B.R. 785, 788 (Bkrtcy.S.D.N.Y. 1981). The pre-petition tax liens involved here would not be avoidable under § 545 because they are not the sort of liens that first become effective upon bankruptcy or insolvency.

The bank also asserts that post-petition interest and penalty are not recoverable by King and Spokane counties as a consequence of liens perfected prior to the filing of the Chapter 11 petition. The bank asks the Court to find that the debtor is insolvent and further asks the Court to disallow the counties' claims for interest and penalty based on such proposed finding.[3]

■ Post-petition interest questions are governed by federal law. *Vanston Bondholders' Protective Committee v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946); *Debenture Holders Protective Committee of Continental Investment Corporation v. Continental Investment Corporation,* 679 F.2d 264, 268 (1st Cir.1982). Code § 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

There can be no question that the tax-lien secured properties are of amounts well in excess of the amounts of the taxes, interest and penalties being claimed herein. This fact is not dispositive, however.

■ Code § 502(b)(2) provides for the disallowance of claims to the extent of unmatured interest as of the date of the petition. This seemingly broad prohibition admits certain exceptions. See *In re Busman,* 5 B.R. 332, 336 (Bkrtcy.E.D.N.Y.1980). Under case law under the former Bankruptcy Act, three exceptions were carved out of a general prohibition on unmatured interest to the effect that interest was allowed where: (1) the alleged bankrupt proves solvent; (2) the security held by the creditor as collateral produces income after the filing of the petition; and (3) the security is sufficient to pay interest as well as the principal amount of the claim. See *United States v. Bass,* 271 F.2d 129, 130 (9th Cir. 1959). The Ninth Circuit has held that the third exception is not available to liened tax claims for the principle reason stated in *United States v. Harrington,* 269 F.2d 719, 724 (4th Cir.1959):

* * * [W]hen the creditor extended credit, he relied upon the particular security given as collateral to secure both the principal of the debt and interest until payment and, if the collateral is sufficient to pay him, the contract between the parties ought not be abrogated by bankruptcy. This rationale has no application to tax liens.

Quoted in *United States v. Bass, supra,* at 131. Accordingly, in order to receive interest resulting from pre-petition tax liens, the counties must avail themselves of one of the first two exceptions listed above.

■ However, there has been no evidence presented that the debtor is solvent or that the property upon which the county claimants held pre-petition tax liens produced income after the filing of the petition.[4] In fact, the liened property was sold shortly after the filing. In these circumstances, the general prohibition against unmatured interest set forth in Code § 502(b)(2) must operate to preclude the counties from receiving post-petition interest as a result of pre-petition liens.[5]

■ As regards the contested claim for penalties, it is perhaps significant that § 502(b), the provision of the Code which prescribes the grounds upon which certain

---

**3.** RCW 84.56.020 provides for interest on delinquent taxes at the rate of 12% per year, and penalty of 8% on the total amount of tax delinquent on November 30 of the year when the tax is due. RCW 84.60.010 provides in pertinent part that the lien for taxes "include[s] *all charges and expenses* of and concerning the said taxes which, by the provisions of this title, are directed to be made." (Emphasis added).

**4.** The Court takes notice of the filing by the trustee of an application to convert the case to Chapter 7.

**5.** *Cf. In re Stirling Homex Corporation,* 591 F.2d 148, 157 (2d Cir.1978) (liquidation in ongoing Chapter X proceeding under the former Bankruptcy Act said to permit application in equity of basic priority principles of straight bankruptcy to state tax claims).

claims may be disallowed, contains no specific provision disallowing claims for penalties. In any event, the legislative history to the Code[6] clearly indicates that lien-secured penalties were not intended to be avoidable in Chapter 11 cases. See House Report No. 95–595, 95th Cong. 1st Sess. (1977) 382; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 96 U.S.Code Cong. & Admin. News 1978, p. 5787. *In re Program Management and Design Associates, Inc.,* 25 B.R. 144 (Bkrtcy.D.Mass.1982). Therefore, as long as this case remains in Chapter 11, this Court is constrained to allow the claim for penalties secured by pre-petition tax liens.

### B. *Post-petition Assessments.*

On June 22, 1982, King County listed and valued personal property of the estate for 1983-payable taxes. On October 7, 1982, two days after the Court authorized the sale of the personal property of the estate located in King County, the county computed the 1983-payable taxes at the request of the trustee. This computation apparently was done pursuant to RCW 84.56.070 which provides in pertinent part:

> [I]f the county treasurer has reasonable grounds to believe that any personal property upon which taxes have been levied, but not paid, is about to be removed from the county where the same has been assessed, or is about to be destroyed, sold or disposed of, the county treasurer may demand such taxes, without the notice provided for in this section, and if necessary may forthwith distrain sufficient goods and chattels to pay the same.

See also RCW 84.56.090. The sale of the estate's personal property located in King County closed on October 18, 1982. The same date the Court confirmed the sale, free and clear of liens, specifying that all claims and interests in the property were replaced by the right to make claim against the proceeds of sale.

King County contends that it held a lien for the 1983-payable taxes as a result of the June 22, 1982 assessment at the time it computed the 1983-payable taxes. The county contends that its October 7, 1982 computation of the 1983-payable taxes (at the 1982 levy rate since the 1983 rate had yet to be established) rendered the 1983-payable taxes due prior to or at the closing of the sale. The county therefore contends that it holds a lien for the 1983-payable taxes, and interest and penalty thereon.

It should be noted that it appears that the proximity of the listing and valuation on June 22, 1982 to the earlier filing of the petition in bankruptcy was purely coincidental and that no request for relief from stay was made to this Court. However, Code § 362(a)(4)[7] stays all creditors, including governmental units, from performing acts to perfect liens against property of the estate. See *In re Nashville White Trucks, Inc.,* 22 B.R. 578 (Bkrtcy.M.D.Tenn.1982); *In re Eisenberg,* 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980). Accordingly, any lien which is claimed by King County to have attached *after* the filing of the Chapter 11 petition is void. See *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

King County is not without remedy, however. It has filed a request for payment of post-petition, 1983-payable taxes, interest and penalty as administrative expenses of the estate.

Code § 503 provides in pertinent part:
(a) An entity may file a request for payment of an administrative expense.
(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
(1)(A) . . .

\* \* \* \* \* \*

(4) any act to create, perfect, or enforce any lien against property of the estate;

\* \* \* \* \* \*

---

**6.** § 724(b)(2).

**7.** Code § 362 provides in pertinent part:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title operates as a stay, applicable to all entities, of—

(B) any tax—

(i) incurred by the estate. . .

\*   \*   \*   \*   \*   \*

(C) Any fine, penalty or reduction in credit, relating to a tax of a kind specified in subparagraph (B) of this paragraph.

The post-petition tax itself was clearly "incurred by the estate" and falls within the terms of Code § 503(b)(1)(B)(i). Accordingly, it is allowable as an administrative expense.

■ With respect to King County's claim for interest and penalty, the Court is hesitant to favor the county over other administrative claimants herein.[8] Nevertheless, Code § 362(b)(8) permits the issuance by a tax unit of a notice of deficiency, and King County's November 3, 1982 filing of a request for payment of administrative expense for 1983-payable taxes properly may be viewed as such notice, from which penalty and interest may run if permitted by Code § 503. Because § 503(b)(1)(C), *supra,* specifically provides that a tax penalty incurred by the estate is recoverable as an administrative expense, the Court will allow the county's claim insofar as penalty is sought.

With respect to interest on the delinquent portion of the personal property tax, however, nothing in Code § 503 specifically provides for same.

The legislative history of § 503(b)(1)(B) indicates that the Senate desired administrative priority for interest on taxes[9] and that S.2266 passed by the Senate on September 7, 1978 specifically provided for this. But earlier, the version of H.R. 8200 passed by the House on February 1, 1978, omitted any reference to interest on taxes, and provided only that taxes on, measured by, or withheld from wages, salaries or commissions attributable to the post-petition period would be administrative expenses. Code § 503(b)(1)(B), as finally enacted, omits any reference to interest on taxes as being ac-

corded administrative priority. The legislative history addressing the compromise bill is silent as to why the Senate's specific provision for interest was omitted. 124 Cong.Rec. H 11,094–5 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978). Because § 503(b)(1) adopts the approach taken in the House bill as modified by some provisions contained in the Senate amendment, it is a plausible inference that the omission of the words "including interest thereon" from the language "any taxes, including interest thereon" as set forth in § 503(b)(1)(B) of S.2266 was deliberate and significant. This Court does not think that the omitted words were surplusage, and notes that substantial discussion had been addressed to the issue of post-petition interest and penalty on taxes under the former Bankruptcy Act. See, e.g.: *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966) (taxes incurred in Chapter XI proceeding itself, accrue interest, except the accumulation of interest is suspended if a petition in liquidation is filed); *In re International Power Securities Corp.,* 109 F.Supp. 544 (D.N.J.1953) (trustee is liable not only for the principal amount but also the interest thereon where, under the provisions of local law, such interest is assessable against taxpayer upon his failure to pay the tax within the time prescribed). Accordingly, the claim of King County for interest on personal property taxes assessed after the filing of the debtor's Chapter 11 petition is denied.

The foregoing shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752.

---

8. Administrative expense claimants are normally on a parity as to payment under the Code. See *In re Western Farmers Association,* 13 B.R. 132, 134 (Bkrtcy.W.D.Wash.1981).

9. See S.Rep. No. 989, 95th Cong., 2d Sess. 66 (1978).