**In re HOSPITALITY ASSOCIATES OF LAUREL, Debtor.**

**Bankruptcy No. 86–249.**

United States Bankruptcy Court,
D. New Hampshire.

Aug. 21, 1997.

Stephen Darr, KPMG Peat Marwick, Boston, MA, Chapter 7 Trustee.

Grenville Clark, Gray, Wendell & Clark, Manchester, NH, for Debtor.

Dennis Bezanson, Portsmouth, NH, for Trustee.

Geraldine Karonis, Office of U.S. Trustee, Manchester, NH, for U.S. Trustee.

Avery Ellis, U.S. Dept. of Justice, Tax Division, Washington, DC, David L. Broderick, U.S. Attorney's Office, Concord, NH, Mae Lew, Boston, MA, for U.S. I.R.S.

*MEMORANDUM OPINION*

JAMES E. YACOS, Chief Judge.

The principal question presented for decision by the Court in this case relates to whether an unpaid administrative tax liability claim by the Internal Revenue Service, stemming from the chapter 11 stage of this case in 1988, is entitled to include interest running on that claim from that time until the conclusion this year of the succeeding chapter 7 liquidation under the applicable Bankruptcy Code provisions for distribution of a bankruptcy estate. The case presents an important issue of statutory construction when the "plain meaning" of the statutory provisions in question is clear unless clouded by an "ambiguity" that may be real or may stem only from a conclusory mote in the eye of the judicial beholder.

This case was filed as a chapter 11 proceeding on June 4, 1986 and was converted to chapter 7 on January 26, 1989. Prior to conversion, on October 5, 1988, the IRS filed a proof of claim no. 69 asserting unpaid taxes stemming from the first quarter of 1988 in the amount of $27,934.20, plus interest through September 30, 1988 of $1,279.14, plus penalties of $3,491.35, for a grand total of $32,704.69. When the trustee's liquidation of this estate was complete, and he was on the verge of providing for a final distribution to creditors, the IRS filed claim no. 86 on April 21, 1995 which asserts that it amends claim no. 69 and claims a total tax liability unpaid as a chapter 11 administrative expense of $65,580.05.[1] This claim includes the same principal tax liability of $27,934.20, but increases the interest claimed from the original amount of $1,279.14 to $29,460.65 by claiming accrued interest to within ten days of the filing of claim no. 86 in 1995. Further interest would accrue until the date of actual

1. Claim no. 86 actually asserts a gross amount of $67,580.05 but as developed at the hearing before this Court it was a simple arithmetical error made by the claimant and it is agreed that the actual claim is $65,580.05.

distribution on the claim.[2] The claim also increases the penalties from the original $3,491.35 to $8,185.20[3] but again with regard to the same liability and same tax periods in 1988.

The chapter 7 trustee filed an objection to claim no. 86 on November 9, 1995. (Court Doc. No. 206) In addition to contending that as a matter of law the claimant was not entitled to allowance of interest on the claim the trustee also contended that even if allowable both the interest and the penalties should be equitably subordinated to other claimants on the particular facts of this case. The Court conducted a hearing on the trustee's objection on January 9, 1996, heard oral argument on June 10, 1996, allowed further briefing by the parties, and thereafter took the matter under advisement in view of the importance of the decision on this issue to the administration of bankruptcy estates generally. The government has not previously in this district asserted that chapter 11 administrative tax claims not only generate allowable interest, but also that such accruing of interest would continue beyond conversion of the case to chapter 7, and indeed to the conclusion of the chapter 7 liquidation and actual payment upon the claim.

The trustee seeks to avoid confronting the statutory question regarding entitlement to interest by contending that even if allowable both the interest and the penalties on the administrative tax claim in this case should be equitably subordinated to the other creditors under § 510(c) of the Bankruptcy Code. However, the Supreme Court has recently instructed federal judges in *United States v. Noland,* — U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), that the Courts have no warrant to equitably subordinate—on a categorical basis—claim entitlements in derogation of the scheme of priorities enacted by Congress in the Bankruptcy Code. —— U.S. at ——, 116 S.Ct. at 1528. The *Noland* decision involved an attempt to avoid the first priority given to administrative tax claims by a generalized concept of equitable subordination. The case itself did not involve any question of the priority of interest on such claims. In the present case, the only *particularized* ground asserted for equitable subordination of interest by the trustee was his contention that the IRS added the claim for interest belatedly in 1995 after the liquidation of the estate had been accomplished and should be equitably subordinated on that ground. Transcript, June 10, 1996, pp. 40–41. That contention is simply incorrect on the facts. As noted above, the IRS in its original proof of claim in 1988 clearly asserted a claim for interest and penalties on its unpaid administrative tax liability. The Court therefore rules that there is no basis on the facts of this case to support equitable subordination of either the interest or the penalties included in the subject administrative tax claim.

The Court accordingly must proceed to address the key question of law as to whether the Bankruptcy Code requires payment of interest upon administrative tax claims stemming from the chapter 11 stage of a bankruptcy case that ultimately goes into liquidation under chapter 7 of the Bankruptcy Code.

### *THE STATUTES INVOLVED*

Section 726(a)(1) of the Bankruptcy Code provides that in distribution of the property of the estate—in a chapter 7 liquidation—payment shall first be made to priority claims as specified in § 507 of the Code before any distribution to general unsecured prepetition claims against the estate. Section 507(a)(1) of the Code in turn provides that the *first* priority in distribution shall be to "administrative expenses allowed under § 503(b) of this title....". Reference to the pertinent language of § 503(b) indicates first priority is given to "administrative expenses.... including" various categories of such expenses. Subsection (b)(1)(A) thereunder refers to "the actual and necessary

2. As of a projected distribution date of October, 1997 in this case, the nine years of interest running from October, 1988 at a yearly rate of $4,335.62 would translate into a total interest claim of $39,020.58.

3. It is unclear in the record whether additional grounds for penalties were discovered by the IRS or whether the penalties were increased to a maximum "cap" provided by the tax laws.

costs and expenses of preserving the estate" and subsections (b)(1)(B) and (b)(1)(C) specifically deal with administrative tax liabilities and provides that priority for that category extends to "any tax.... and.... any fine, penalty, or reduction in credit relating to a tax....". incurred by the estate. Finally § 726(b)(5) provides for a *fifth* priority, in distribution of the property of a chapter 7 estate, after payment of all administrative claims, and all prepetition unsecured claims, for the payment "fifth, in payment of interest at the legal rate from the date of filing of the petition on any claim paid under paragraph (1).... of this subsection....". As noted above, the claims paid under the paragraph referenced in this language includes the class of administrative claims payable pursuant to sections 503 and 507 of the Bankruptcy Code.

*STATUTORY ANALYSIS*

Reading these statutory provisions with a clear head untainted by any exposure to the case law would lead to the obvious conclusion that by the plain terms of the statutory provisions involved an administrative tax liability is to be paid first but that any interest on that administrative liability is to be deferred and paid only as a fifth priority. On first blush there does not appear to be any ambiguity in this statutory construct.

If any resort to legislative history were required to resolve any ambiguity that may be present in these statutory provisions, that investigation would reveal that the Senate version of what ultimately became § 503(b) specifically included the language "any taxes, including interest thereon" but that this language was not included in the House version and was not included in the final enactment. See *In re Stack Steel & Supply Co.,* 28 B.R. 151, 156 (Bankr.W.D.Wa.1983).

The Court of Appeals for the First Circuit in a recent decision in *In re Jarvis,* 53 F.3d 416, 419 (1st Cir.1995) gave as guidance for appropriate statutory construction the following:

> If possible, a statute should be construed in a way that conforms to the plain meaning of its text. See, e.g., *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469 [474], 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); *Pritzker v. Yari,* 42 F.3d 53, 67–68 (1st Cir.1994), cert. denied,514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995); [*United States v.*] *Holmquist,* 36 F.3d [154] at 159 [(1st Cir.1994)]. There are, of course, certain exceptions to this rule. See, e.g., *United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 461, 113 S.Ct. 2173, 2186, 124 L.Ed.2d 402 (1993) (discussing "a simple scrivener's error"); *Sullivan v. CIA,* 992 F.2d 1249, 1252 (1st Cir.1993) (observing exception when an absurd or legally unacceptable result would otherwise obtain). The case at bar does not require us to probe the exceptions to the general rule. When a statute's language is ambiguous, however, a court must often venture into extratextual territory in order to distill an appropriate construction. See *Pritzker,* 42 F.3d at 67; see also *Sullivan v. CIA,* 992 F.2d 1249, 1252 (1st Cir.1993) (noting the power of courts to "look behind statutory language" when the legislature "blow[s] an uncertain trumpet").

The Supreme Court, in *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), has instructed that statutory provisions in the Bankruptcy Code are to be read and implemented as written unless the result is "demonstrably at odds with the intentions of its drafters." 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

Left to my own devices therefore I would conclude without much further ado that Congress in the instance of the statutes involved in the present case blew a "veritable clarion call" on its legislative trumpet by these explicit statutory provisions to provide that the tax itself is to be paid as a first priority administrative expense but that any interest upon that class of claims is to be paid as a fifth priority expense, if possible, after all other prior classes of claims are paid. In the present case, fifth priority claims will not be paid and therefore the issue has been joined

between the IRS and the trustee.[4]

### THE CASE LAW

Notwithstanding the foregoing, the briefing and research in this matter has revealed that all Courts of Appeals that have addressed this statutory question have concluded that interest is to be paid on administrative tax claims as a first priority under § 503(b) of the Bankruptcy Code. See *U.S. v. Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984); *Allied Mechanical Services, Inc.*, 885 F.2d 837 (11th Cir.1989); *In re Mark Anthony Construction*, 886 F.2d 1101 (9th Cir.1989); *In re Flo-Lizer, Inc.*, 916 F.2d 363 (6th Cir.1990); and *In re Preferred Door Company, Inc.*, 990 F.2d 547 (10th Cir.1993) (dicta).

The Court of Appeals for the First Circuit has not addressed this question.[5] The Courts of Appeal cited above have expressed their rationale for reading the word "interest" into § 503(b)(1) in various ways. In the earliest case, the court in *U.S. v. Friendship College, Inc.*, 737 F.2d 430, 432–433 (4th Cir. 1984), very briefly stated its rationale as follows:

> The Bankruptcy Code accords first priority treatment to penalties on taxes which are first priority administrative expenses, § 503(b)(1)(C). Interest, on the other hand, is not mentioned by the Code, but we find no support anywhere for differentiation in the treatment of the tax and the interest thereon. Although the trustee argues that the absence of a provision like § 503(b)(1)(C) precludes first priority treatment for interest, we are unconvinced. To treat interest inconsistently from the taxes and penalties, we would require proof that such different treatment was intended by the Code. Instead, the only indication we have one way or the other suggests that interest should be first priority, see, Report of the Senate Judiciary Committee, S.Rep. No. 95-989, 95th Cong., 2d. Sess. (1978), at 66, reprinted in, 1978 U.S.Code Cong. & Admin.News, 5787, where it was stated that interest on first priority taxes should also receive first priority treatment. We therefore opt for consistency. The Code does allow us to do this by treating the interest as a general administrative expense under § 503.
>
> We therefore hold that the government is entitled as a first priority expense of the bankruptcy estate to full payment of the taxes claimed, the penalties for failure to pay them on time, and interest from the date that it accrued.

The court in *Allied Mechanical Services, Inc.*, 885 F.2d 837, 839 (11th Cir.1989), recognized that the legislative history cited in the *Friendship* case was inapposite, since the Senate Bill language was not adopted, but nevertheless reached the same result based on what it denominated the "silence" of Congress:

> As the bankruptcy court observed, the Senate version of what ultimately became section 503(b) specifically included the language "any taxes, including interest thereon." The House version, however, was silent. For a discussion of the legislative history of § 503(b), see *In re Stack Steel Supply Co.*, 28 B.R. 151, 156 (Bankr. W.D.Wash.1983). Because Congress had the issue of post-petition tax liability before it, the bankruptcy court concluded that Congress, by omitting the language "interest thereon," meant that the interest

4. The funds available are insufficient to even pay *any* class below the administrative claims class and so the effect of a ruling in the present case will either prefer or not prefer the IRS vis-a-vis various state administrative tax claimants. However, the logic of a ruling on the statutory theory advanced by the United States would be equally applicable in precluding any distribution to prepetition unsecured creditors depending on the funds available in other cases.

5. The Court in *In re Boston & Maine Corporation*, 719 F.2d 493, 495–500 (1st Cir.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984), did affirm a lower court decision denying interest on an administrative tax liability but that decision was bottomed upon a specific order of the reorganization court handling a railroad reorganization under § 77 of the prior Bankruptcy Act delaying payment of current taxes in the public interest to foster the reorganization of the railroad in question. The decision did not require construction of the present statutory provisions under the 1978 Bankruptcy Code as involved in this case.

should not be included as an administrative expense.

The question is undoubtedly a close one. Yet it is always difficult to try to interpret legislative silence, and we believe that in this case the bankruptcy court erred.

Under the prior law, interest on post-petition tax liability would be treated as a first priority administrative expense, although, like the current statute, the language of the prior statute was not explicit. See *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). In essence, interest on the post-petition tax liability was treated as part of the underlying tax liability itself. Thus, Congress may have reasoned that it was unnecessary to specify that post-petition interest would receive administrative priority.

Absent some indication from Congress that it intended to change the priorities, we believe it proper to continue to construe the statute as giving priority to the Internal Revenue Service's claim for interest on post-petition tax liability. It would be inconsistent to give priority to a penalty associated with a tax liability but not give priority to the interest on that same tax liability.

The Court in *In re Mark Anthony Construction,* 886 F.2d 1101, 1105, 1107–1108 (9th Cir.1989), found an "apparent contradiction" within § 503 and concluded on that basis as follows:

> Our approach to interpreting the bankruptcy laws must, as statutory construction should generally, begin with the language of the statute itself. *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235 [240], 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The text of section 503 immediately presents two seemingly contradictory aspects. The resolution of this apparent contradiction is central to our conclusion. On the one hand, the section lists a series of expenses which should be treated as first priority administrative expenses. When a statute sets forth a series of items included under a general rule, the canon of expressio unius est exclusio alterius, under which a court infers an intention to make the statute's application restricted and limits the application of the statute to the specific listed examples, is often deemed applicable. See *Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542, 552 (7th Cir.1985) ("Cash Currency"); 2A Singer, *Sutherland Statutory Construction,* § 47.23 at 194 (1984).
>
> On the other hand, the structure of section 503(b) is inconsistent with a restrictive interpretation of its list of administrative expenses; the statute states that "there shall be allowed administrative expenses, ... including—" and then lists (in subsections (1)–(5)) a series of expenses. 11 U.S.C. § 503(b)(1)–(5). In construing a statute, the use of a form of the word "include" is significant, and generally thought to imply that terms listed immediately afterwards are an inexhaustive list of examples, rather than a bounded set of applicable items.
>
> * * *
>
> The implication of the foregoing for our inquiry is manifest. Congress never expressed an intention to create a new rule with respect to the priority of interest accruing on post-petition taxes; it did not in any way evince a desire to overrule *Nicholas.* Given this fact, we avoid the "treacherous" course of inferring from Congress' silence any affirmative intentions. We are unsure to what extent Congress, in enacting section 503, considered *Nicholas.* At the same time, we are certain that, to the extent it did consider the case, it provided us with no basis to conclude that it intended to overrule it. See *In re Associated Air Services, Inc.,* 75 B.R. 47, 49 (Bankr.S.D.Fla.1987) ("nothing in the [Code's] legislative history to indicate the Congress wished to abrogate *Nicholas* under the present Bankruptcy Code") (and, by extension, in the word "tax"), we decline to rest our decision on this isolated snippet of legislative history.
>
> Finally, we agree with the Bergin court that "there is no logical reason why Congress would afford administrative treatment to penalties but not to interest." *[In re] Bergin,* 77 B.R. [210] at 212 [(Bkrtcy. E.D.Wis.1987)]. Penalties, unlike interest,

are not normally considered integral to the tax debt itself, and we can discern no justification, in the legislative history or elsewhere, for Congress' adopting a rule that gives a greater priority to penalties than to interest. For this third reason also, we believe that a rule which affords first priority as an administrative expense to post-petition interest is both sensible in itself and consistent with the Code.

The Bankruptcy Code is a complex, sometimes nearly opaque, statute, and the rules of construction we must apply to its dimmer aspects are themselves arcane, even contradictory at times. Nonetheless, we believe that the decision we have stated and explained here is the correct one. It is consistent with the language Congress adopted in drafting section 503. It is not contravened, or even cast into doubt, by the legislative history of the statute. It preserves a rule of common law in a case in which there is no indication that Congress meant to overrule that law. Finally, it is consonant with the treatment of similar issues in different contexts in the Bankruptcy laws.

And to us the contrary rule makes little sense.

The Court in *Flo–Lizer, Inc.*, 916 F.2d 363, 366 (6th Cir.1990), found "no reason" why Congress would intend to exclude interest on such claims and concluded:

> The inclusion of penalties on postpetition taxes in section 503(b) indicates that Congress was willing to have the bankruptcy estate pay for expenses that arise out of the failure of the debtor in possession or the trustee to pay taxes in a timely manner. There is no reason why Congress would give a lesser priority to interest than to penalties.
>
> Finally, Flo–Lizer's argument that treating interest on post-petition taxes as an administrative expense would give the government an unfair advantage over other administrative claimants fails because the government is not in the same position as other claimants. The IRS is given preferred treatment under the Bankruptcy Code because it cannot choose its debtors or take advance security on tax debts. See 1978 U.S.Code Cong. & Admin.News at 6150–52. "[W]hile the bankruptcy laws can delay payment of taxes rightly owed, the operation of those laws should not work to force a taxing authority to make an interest-free loan to a party temporarily excused from paying taxes." *In re Mark Anthony*, 886 F.2d at 1108 n. 10 (citing *In re Boston and Maine Corp.*, 719 F.2d 493, 503–04 (1st Cir.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984)).

The court in *Preferred Door Company, Inc.*, 990 F.2d 547, 549–551 (10th Cir.1993), affirmed the dismissal of a chapter 11 case on many grounds indicating inability to propound a confirmable reorganization plan and noted in passing:

> Here, the bankruptcy court found the second amended plan unacceptable because of Preferred Door's inability to pay postpetition tax liability. Several Bankruptcy Code sections prescribe a Chapter 11 plan's treatment of postpetition taxes, interest, and penalties. Sections 503(b)(1)(B) and (C) of the Code state any taxes incurred by the estate, except prepetition taxes specified in section 507(a)(7), and any penalties related to the taxes are administrative expenses. See *In re Flo–Lizer, Inc.*, 916 F.2d 363, 365 (6th Cir. 1990). Several courts have concluded interest on postpetition taxes also should be treated as an administrative expense under section 503(b). See, e.g., *In re Flo–Lizer, Inc.*, 916 F.2d at 366–67; *In re Mark Anthony Constr., Inc.*, 886 F.2d 1101, 1101–02 (9th Cir.1989).

None of the foregoing Court of Appeals' decisions grapples with, or discusses in any detail, the question of whether there is any justification as a matter of statutory construction to read the word "interest" into § 503(b) [6] when § 726(a)(5) explicitly provides for interest on administrative claims

6. It is unclear just *where* in § 503(b) these courts would place the new judicially created reference to an entitlement to interest. As will be noted later it makes a big difference whether it is read into § 503(b) generally as a new "subsection" or only into § 503(b)(1)(B) and (C) dealing with taxes.

including tax claims but only as a fifth priority. Neither the *Friendship College* decision nor the *Preferred Door* decision mentions § 726(a)(5) at all. The *Mark Anthony Construction* decision makes passing reference to § 726 generally as part of the statutory construct for priorities (886 F.2d at 1103) and refers to § 726(a)(5) only as part of a passing reference to a bankruptcy court decision in Oregon reaching a contrary result (886 F.2d at 1104) but not offering any reasoned analysis as to why it was appropriate to exclude the effect of § 726(a)(5) from its decision. The *Allied Mechanical Services, Inc.*, decision makes reference to § 726 only in general terms as part of the overall statutory construct on priorities and in quoting the statute quotes only subsection § 726(a)(1) with no reference to subsection (a)(5). The decision in *Flo–Lizer* makes brief reference to § 726 as "providing post-petition interest to unsecured claims when the bankruptcy estate ultimately proves to be solvent" (916 F.2d at 366), but ignores the more salient fact that unsecured claims are not limited to prepetition debt but also *include* administrative tax claims.

It should also be noted that none of the Court of Appeals decisions involve an explicit holding that post-petition interest on administrative tax claims, even if allowable by the statute, would extend beyond the date of conversion to Chapter 7.[7] This is not surprising since the original pre–Code decision in the Supreme Court in *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), reached a determination under the then-existing bankruptcy statute that interest on an administrative tax claim should be paid—but only as accrued during the reorganization stage of the case. 384 U.S. at 686, 86 S.Ct. at 1681.

The decisions cited by the trustee in support of his position in this case all come from the lower courts. The key early decision was in *In re Stack Steel & Supply Co.,* 28 B.R. 151 (Bankr.W.D.Wa.1983) which recited the legislative events leading to the deletion of the reference to "interest" in § 503(b)(1) and therefore concluded that Congress did not intend that interest be paid on administrative claims as a first priority. Other lower court decisions have followed the *Stack Steel* analysis and decision. See, e.g., *In re Luker,* 148 B.R. 946 (Bankr.N.D.Okla.1992), *aff'd, U.S. v. Luker,* 1993 WL 740989 (N.D.Okla.1993); *In re Compass Marine Corp.,* 146 B.R. 138 (Bankr.E.D.Pa.1992); *Matter of Mansfield Tire and Rubber Co., Inc.,* 73 B.R. 735 (Bankr.N.D.Ohio 1987); *Matter of Hirsch–Franklin, Enterprises, Inc.,* 63 B.R. 864 (Bankr.M.D.Ga.1986); *Matter of Lumara Foods of America, Inc.,* 50 B.R. 809 (Bankr. N.D.Ohio 1985).[8]

A decision squarely on point in support of the trustee's position appears in *In re National Automatic Sprinkler Co. of Oregon, Inc.,* 63 B.R. 49 (Bankr.D.Or.1986).[9] This decision does focus upon and evaluate the effect of § 726(a)(5) in this context as follows:

> Taxes are statutory obligations that arise by virtue and subject to the terms of the laws that create them. 26 U.S.C. § 6601(f)(1). Notwithstanding the Internal Revenue Code, however, 11 U.S.C. § 726(a)(5) provides that in a chapter 7 distribution of estate property, payment of interest at the legal rate from the date of the petition on, among others, administrative claims enjoys a fifth priority, after payment of those very administrative claims and various classes of unsecured claims. The drafters of the Code failed to designate interest on administrative taxes as they did tax penalties as an administrative expense under § 503(b), yet did expressly designate interest on administrative claims as a fifth priority add-on claim

7. The decisions in *Mark Anthony, Flo-Lizer,* and *Preferred Door* on their facts involved IRS administrative tax claims that claimed interest accrued only during the chapter 11 stage of the particular case. See 886 F.2d at 1102, 916 F.2d at 364, 990 F.2d at 548. The decisions in *Friendship College* and *Allied Mechanical* do not specify whether the tax claim in question included interest beyond the date of conversion nor do they discuss the point.

8. There are of course lower court decisions reaching the opposite result. See, *In re Garfinckels, Inc.,* 203 B.R. 814 (Bankr.D.Co.1996) and cases cited therein.

9. As noted above the Ninth Circuit in the *Mark Anthony* decision did in effect reject the rationale of this decision albeit not in any detailed manner. 886 F.2d at 1104.

under § 726(a)(5). This language expresses a legislative intent to subordinate to a lower priority any interest on claims, including administrative claims for taxes in all chapter 7 cases even though the interest may have accrued during the operating chapter 11.

The point that § 726(a)(5) cannot be ignored in a proper statutory construction of the relevant Bankruptcy Code provisions in this context is made most forcefully by a dissenting opinion in the recent case of *In re Rocky Mountain Refractories,* 208 B.R. 709, 718–719 (10th Cir. BAP 1997) as follows:

> The majority additionally rely on *Small Business Admin. v. Preferred Door Co. (In re Preferred Door Co.),* 990 F.2d 547 (10th Cir.1993), which, as they must recognize, "assumed" that interest on taxes carries the priority. Granted, the Court of Appeals did impliedly insert "interest on taxes" into section 503(b)(1), but it is significant that that decision does not confront the clear language of section 726(a)(5), for the case had not been converted to one under Chapter 7. In concluding, the majority says that "[g]ranting first priority to postpetition interest on administrative expense claims incurred in a Chapter 11 case facilitates § 503(b)'s general purpose of encouraging creditors to continue dealing with Chapter 11 debtors." This statement may be true but it is not relevant to our case. I find nothing in *Nicholas* or the Code saying that trade creditors, suppliers, landlords, lawyers, and others who supply goods and services to Chapter 11 debtors are entitled to interest on their administrative claims. *Nicholas* addresses only interest on taxes, not interest on other administrative expenses. Furthermore, is it logical to say that taxing authorities need an incentive to levy taxes on debtors? I believe the question answers itself. And, if entities who assist in preserving estates are to be paid interest on their claims that is a policy issue for Congress to deal with. When the majority allow priority interest on the Brailsford trade claim they are, indeed, venturing into uncharted waters.

What this case ultimately comes down to is whether or not the outcome is controlled by *Nicholas* assuming, arguendo, that the decision does grant priority for the interest claims of the governmental units. As I have explained, section 726 controls distribution of property of this estate. The funds to pay the interest are unquestionably estate property; the case is under Chapter 7 and, thus, the priority for payment of interest is governed by section 726(a)(5). I can find no ambiguity in this absolute mandate.

It is apparent that recent decisions of the Court and contemporary jurisprudence indicate that reliance on legislative history should be limited to cases where the statute being interpreted is ambiguous or the result reached by following it is absurd and the history, itself, expresses a clear intent explaining its meaning. See *3 Sutherland Statutory Construction* 631 (Norman J. Singer ed., 5th ed.1992). See also Note, Why Learned Hand Would Never Consult Legislative History Today, 105 Harv. L.Rev. 1005 (1992) (which contains an interesting discussion of the unreliability of present-day legislative history and proposes a refreshing approach to the issue).

Even if we do look at it, however, in this case the legislative history is of no real assistance. All the history shows is that the original Senate version of the Bankruptcy Code expressly provided for interest priority and this language was dropped in the final version. See 4 Collier on Bankruptcy P 503.08 (Lawrence P. King ed., 15th ed. rev.1997). What, therefore, does this omission mean? On the one hand we can read it to say that the intent was to not allow the priority or, on the other hand, we can say that the language was eliminated for it was deemed unnecessary. Numerous cases exemplify this dichotomy. See, e.g., *United States v. Tedlin (In re Mark Anthony Constr., Inc.),* 78 B.R. 260 (9th Cir. BAP 1987), rev'd, 886 F.2d 1101 (9th Cir.1989). There, two courts, each considering the same case, find a different intent in the same legislative history. Thus, the history itself is ambiguous and unclear while, to me at least, the Code is not.

It also seems superfluous to attach great significance to the fact that the legislative history does not mention *Nicholas.* Granted, there is no precise language in the legislative history specifically abrogating *Nicholas.* Does this mean that if Congress does not directly address a specific decision when enacting an entirely new code the force of its legislation is impaired? To my thinking the answer to this interrogatory must, in the context of this case, be in the negative. Here Congress passed an entirely new, comprehensive scheme to control the administration and liquidation of bankruptcy estates. It is improbable that in so doing it would enumerate the hundreds of decisions that might be affected. There is no need for that enumeration because the Code was not necessarily aimed at overturning any specific decision. Instead, its purpose is more universal than that and its goal is to implement the new scheme.

Also, one would expect that if a case of historical proportions and great public significance is being specifically abrogated Congress would make some recorded discussion of that fact. For example, if Congress were setting about to attempt to alter *Brown v. Board of Education,* 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955) or *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) there likely would be considerable discussion of the specific decision in the history of its proceedings and an expression of the intended result. On the other hand, arranging the priorities of bankruptcy distribution is hardly of wide public significance and is primarily of interest to only a handful of lawyers and accountants. It is inconceivable that Congress would, or even could, list every case affected by the adoption of a comprehensive new code. This is especially true when we remember that the portion of *Nicholas* in question is dicta.

The legal system deals with everything under the sun. Every statute embodying new affirmative legislation, as distinguished from statutes which merely codify existing law, has the purpose and effect of changing some element or provision in the established body of traditional or statutory law. Furthermore, changing social and economic conditions have often made reference to the older jurisprudence less valuable. The result has been that the most responsive interpretative technique is one which recognizes that one of the best sources of information is the policy general plan [sic] of the legislation itself. 3 Sutherland Statutory Construction § 58.03 (Norman J. Singer ed., 5th ed.1992) (emphasis supplied) (footnotes omitted).

In our case the requirement of the Bankruptcy Code governing distribution of an estate in Chapter 7 is to give interest the priority of section 726(a)(5) and this is now a Chapter 7 case.

The foregoing summary of the case law indicates that the weight of authority in the higher courts clearly supports the government's position on the entitlement to postpetition interest on administrative tax claims, at least until the date of conversion to chapter 7 in a bankruptcy case commenced under chapter 11, but that none of the decisions reaching that result to date have seriously evaluated the effect of the contrary explicit statutory provision under § 726 of the Bankruptcy Code.

## *DISCUSSION*

The hearings in this case have demonstrated that important policy questions impacting the administration of bankruptcy cases generally are implicated by the government's position claiming entitlement to interest on post-petition administrative tax claims. It was also shown that until recently the government has routinely filed proofs of claim for such unpaid taxes without claiming interest in a chapter 7 liquidation. See Transcript, June 10, 1996, pp. 17–19, 22–25, and 29–34. Interestingly, notwithstanding the references in the prior decisions that the courts could find "no reason" why Congress would give first priority to penalties but not to interest on administrative tax claims, the trustee in the present case in oral argument was able to suggest one such reason:

* * *

Mr. Bezanson: Just from a policy standpoint, Your Honor, the last question the Court posed, penalties, first of all,

are kept under the Internal Revenue Code at a maximum amount. They don't continue to accrue. Interest on IRS claims continues to accrue until it's paid, Your Honor.

The Court: That is a difference, yeah.

Mr. Bezanson: It is a significant difference, because as the Court knows a Chapter 7 Trustee can inherit a Chapter 11 case that may only have litigation, may only have nominal funds to begin with and may be in litigation for quite some time before any funds are generated in the estate. Meanwhile, if admin taxes on Chapter 11 taxes continue to accrue and whatever benefit the Trustee creates in that process, Your Honor, is eroded by the continual pace of administrative tax interest. Penalties are frozen at a point in time, Your Honor. That's the end of it. They're capped under the Internal Revenue Code.

The IRS basically wants to be the beneficiary, Your Honor, of the entire Chapter 7 administration, whatever it may generate, to the detriment of all other creditors looking at—when one considers the literal interpretation in the Oregon case, Your Honor. They want to be the beneficiary of everything that happens in the Chapter 7, even though the Code doesn't provide it specifically.

It seems to me, Your Honor, that if we're going to disenfranchise and take funds away from all the other creditors, that we better clearly state that in the statute, and that's basically what's happening here, Your Honor.

The Court: All right.

Mr. Bezanson: That interest will erode the entire 7 estate in many cases.

* * *

(Transcript, June 10, 1996, pp. 17–19)

To some extent the existing case law can provoke a "battle of aphorisms" that may result in inappropriate judicial speculation in the face of rather clear statutory provisions. If it is asserted that Congress would not have intended to provide "interest-free loans" to a debtor during a reorganization under the Bankruptcy Code, *Mark Anthony,* 886 F.2d at 1108, *Flo-Lizer,* 916 F.2d at 366, the retort can be that Congress intends in the reorganization process to give the debtor "breathing space" to permit the formulation of a successful reorganization plan to preserve going-concern values, preservation of employee jobs, payoff of trade debt to avoid fostering even more bankruptcy petitions by trade suppliers, and preservation of a tax base often important to local municipal revenues.[10] This Court has previously expressed its opinion that Courts should be leery of departing from statutory language used by Congress to impose their own policy judgments under loaded phrases such as "forced loan", *In re Computer Optics, Inc.,* 126 B.R. 664 (Bankr.D.N.H.1991), or "artificial impairment", *In re Beauchesne,* 209 B.R. 266 (Bankr.D.N.H.1997), that nowhere appear in a statutory provision.

█ If a Court perceives "silence" in a statutory enactment, *Allied Mechanical,* 885 F.2d at 839, it may be that the judicial observer is simply standing outside the forest in which the "plain meaning tree" has been

**10.** While it is not irrational to speculate that Congress might not want to have "interest free loans" made available to a debtor during a long delayed reorganization it also is not irrational to speculate to the contrary that Congress may well have concluded that removing interest from administrative claims—including tax claims—would serve to prompt more close monitoring by such administrative creditors to assure that the debtor in reorganization does not inordinately delay the process. In other words, Congress may have felt that administrative creditors need to be encouraged to "blow the whistle" when they see a debtor taking an inordinate time to reorganize. From a case management standpoint I can note that it is my experience that reorganization courts "need every early warning signal that they can get" in these cases and that this is true for the United States Trustee as well. The foregoing speculation does not of course resolve the question of actual Congressional intent, apart from the evidence indicated by the statutory language enacted, but it does serve to indicate that such speculation by courts can never examine all the manifold factors that may be involved in a legislative enactment. The legislative body itself of course has the ability through legislative hearings and the like to probe all factors involved but cannot in all cases—particularly in a general codification—enumerate all factors considered. *Cf. Ron Pair,* 489 U.S. at 240–41, 109 S.Ct. at 1029–30.

felled by Congressional enactment of a statute that indeed did make its own noise to those standing nearby. Courts should apply a statute as written unless it simply leads to an absurd result or a scrivener's error as the First Circuit noted in its *Jarvis* decision cited above. To the extent that Courts have found "ambiguity" in the statutory provisions here involved it seems apparent that no such ambiguity would be perceived, from the actual statutory language used by Congress, in the absence of a predisposition to find a contrary policy choice as more appropriate than the plain meaning employed by the actual statutory language.

Likewise, while Congress in the legislative history does not make explicit the reasons for its deleting the reference to "interest" in § 503 of the Senate Bill in the final enactment, the contention that it is "inconsistent" to deny first priority status to interest while giving it to penalties is simply flawed for the obvious reason as pointed out by the trustee in this case that interest accrues during the period of delay in administering the bankruptcy case whereas penalties do not increase in the same manner. If a court needs to speculate as to what Congress had in mind, notwithstanding the clear explicit language here used, such rationale to support the deletion to the reference to interest as a first priority is just as compelling as the arguments made as to interest being considered part of the tax, etcetera. However, there is no need to speculate in the present matter since the statute is clear.

The reliance in these decisions about the word "including" in § 503 permitting the reading of "interest" into § 503 is off the mark inasmuch as that language refers to the general enumeration of subsections coming after the "including" reference but does not necessarily expand the scope of the textual language included *within* each of the subsections. It is true that "including" does permit case law development of "other categories" of administrative expense but that does not justify rewriting the language of a particular category already enacted by Congress and especially in the context of the present case in which Congress has provided for interest separately under § 726. What can more appropriately be developed by case law is not a re-writing of terms specified for a particular category but rather *other* "categories" [11] or "entities" [12] that should be included within the general class. By its specification of penalties and exclusion of interest in § 503(b)(1)(B) and (C) of the Bankruptcy Code Congress has *defined* that particular category.

It should be noted that the decisions reading the word "interest" into § 503 of the Bankruptcy Code do not in my judgment follow the evolving guidance on statutory construction that the Supreme Court has given the federal courts in a series of recent decisions. See, e.g., *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241–243, 109 S.Ct. 1026, 1030–32, 103 L.Ed.2d 290 (1989) (judicial inquiry begins and ends with language of statute which is clear and precisely covers subject); *Connecticut Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *Brown v. Gardner*, 513 U.S. 115, 118, 120–21, 115 S.Ct. 552, 555, 556–57, 130 L.Ed.2d 462 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context.... clear textually grounded conclusion is fatal to the remaining principal arguments advanced against it.... congressional silence lacks persuasive significance...."); *United States v. Noland*, — U.S. —, —, 116 S.Ct. 1524, 1527, 134 L.Ed.2d 748 (1996) (broad policy concerns can not be used for "revision" of clear statutory text resulting in a different bankruptcy priority claim structure than Congress actually provided); *Associates Commercial Corp. v. Rash*, — U.S. —, — - —, 117 S.Ct. 1879, 1884–85, 138 L.Ed.2d 148 (1997) (statutory interpretation by lower court improperly focused on only one part of overall statutory construct). These decisions all emphasize

**11.** *Lumberman's Underwriting Alliance v. Hills*, 413 F.Supp. 1193, 1201 (W.D.Mo.1976).

**12.** *Highway Local Union No. 600 v. Gordon Transports, Inc.*, 576 F.2d 1285, 1289 (8th Cir. 1978).

the duty of the courts to avoid imposing their own policy preferences or predispositions in the face of clear statutory language. This trend in the concept of proper statutory construction is also evidenced by a number of recent law review articles. See, e.g., W. David Slawson, *Legislative History and the Need to Bring Statutory Interpretation Under the Rule of Law,* 44 Stanford L.Rev. 383 (1992); Thomas G. Kelch, *An Apology For Plain–Meaning Interpretation of the Bankruptcy Code,* 10 Bankr.Dev. J. 289 (1994). See also, *Review Essay,* "Newt Gingrich, Dynamic Statutory Interpreter", 143 U.Pa. L.Rev. 2209 (1995), for a critical review of the theory of "dynamic statutory interpretation" encompassed in a 1994 book on statutory construction.[13]

It is a daunting task to consider coming to a decision contrary to the decisions of five courts of appeals (albeit one is only dicta) on the subject. However, considering the evolving standards of statutory construction under the Supreme Court's more recent emphasis on the "plain meaning" of statutory provisions, the Court does conclude that the reasoning in the cited decisions is flawed for the reasons noted and that the question should be decided anew in terms of the statutory language involved and the guidance this Court has received from the Supreme Court and the Court of Appeals for the First Circuit. In my judgment the Court of Appeals for this Circuit will not and should not follow the admitted majority of the other Courts of Appeals that have addressed the question. The statute should be construed, as it expressly provides, that interest on administrative tax claims is payable only as a fifth priority.

The mischief that can be done by judicial speculation as to Congressional motives is dramatically illustrated in the recent decision by the Eleventh Circuit in *In re Colortex Industries, Inc.,* 19 F.3d 1371 (11th Cir.1994), in which that Court was constrained to rule (following its rationale employed in its earlier *Mark Anthony* decision) that *other* administrative claimants, i.e., trade debt creditors, were likewise entitled to interest on their administrative claims. That remarkable result, while perhaps compelled by the rationale involved in the earlier decision, would in my judgment be a complete surprise to those legislators that enacted § 503(b)(1) as well as § 726(b)(5) of the 1978 Bankruptcy Code. But for that "opening wedge" in reading interest into § 503 for administrative tax claims, no one could seriously contend that Congress in the enactment of the 1978 Bankruptcy Code considered that they were allowing first priority administrative status to interest on administrative trade debt.

Circuit Judge Frank H. Easterbrook, in an article entitled *The Role of Original Intent In Statutory Construction,* 11 Harvard Journal of Law & Public Policy 59, 64–65 (1988), identified the dangers of overreaching stemming from judicial hubris in divining "legislative intent" in construing a statute:

> [T]here is a question of legitimacy. As I've said, the technique assumes that intentions are "the law". Why are they? If we took an opinion poll of Congress today on a raft of issues and found out its views, would those views become the law? Certainly not. They must run the gamut of the process—*and process is the essence of legislation.* (Emphasis supplied) That means committees, fighting for time on the floor, compromise because other members want some unrelated objective, passage, exposure to veto, and so on. In the one house veto case the Court emphasized the importance of process. Indeed creating the structure of government, the process of legislation, was the most important achievement of the Constitution. As Madison said in Federalist No. 10, the cumbersome process of legislation is the best safeguard against error; a process though which people wrestled for power in a Republic with many loci of power was, he thought, the best way to tease public spirit out of self-interested voters.
>
> Yet the whole process of interpretation from intent is an end run around process. It is a translation from intent to law that we would find repulsive if proposed explicitly. Imagine how we would react to a bill that said, "From today forward, the result

13. For full citation of this 1994 book see footnote 14.

of any opinion poll among members of Congress, shall have the effect of law." We would think the law a joke at best, unconstitutional at worst. This silly "law" comes uncomfortably close, however, to the method by which courts deduce the content of legislation when they look to subjective intent.

[T]he whole method of inquiry seems to obfuscate the law. Often Congress wants a rule—that is, a mechanical device. Rules overshoot or undershoot. But Congress may think the costs of rules less than the combined costs of vagueness and the risk that courts will set off in the direction the law points without seeing the stopping point.

Or, as Justice Holmes put it in a lot less words as usual: "We do not inquire what the legislature meant; we only ask what the statute means." Oliver Wendell Holmes, *"The Theory of Legal Interpretation"*, 12 Harvard L.Rev. 417, 419 (1899).[14]

Professor Reed Dickerson, in his oft-cited book, *The Interpretation and Application of Statutes*, pp. 93–95, Little, Brown and Company, 1975, expresses a similar caution and warning about "Judicial Bootstrap Pulling" as follows:

* * *

Because the need to draw inferences of legislative purpose is less compelling and because the reliability of such inferences tends to be less, the danger of inventing fictitious and fanciful legislative purposes is correspondingly greater. This does not mean that the concept of a legislative, as distinct from a general social or judicial, purpose must be repudiated. It means only that the objective of discovering a real, nonfictitious legislative purpose must be pursued with greater caution.

* * *

As a result, the concept of legislative purpose, despite its frequent usefulness, provides a strong temptation to perform the bootstrap operation of formulating a "legislative purpose" with one eye on the situation to which it is to be applied. While this is an appropriate way to pour the foundation for a judicial rule of law, it is of doubtful propriety and candor when the result is supposedly controlled by the independent purposes of the legislature.

Although Judge Hand has described interpretation as the "proliferation of purpose," Justice Frankfurter notes that in the hands of "judges Intellectually less disciplined than Judge Hand ... it might justify interpretations by judicial libertines, not merely judicial libertarians." On a later occasion, he added that judicial construction ought "to stick close to what the legislature says and not draw prodigally upon unformulated purposes or directions." There is reason to believe that Frankfurter's fears have often been realized.

* * *

More recently, and more specific to the problem at hand, Bankruptcy Judge Thomas Britton in *In re Fred Swain, Inc.*, 97 B.R. 660, 662 (Bankr.S.D.Fla.1989), held in an analogous situation that interest would not be allowable on an administrative claim for pension assessments, and noted the dangers and implications for the real world of bank-

14. I am aware of course that it is currently fashionable for some academic commentators to disparage "plain meaning" statutory construction as somewhat simplistic and not befitting the flexible and creative role that federal judges should employ in construing legislative enactments. See, e.g., William N. Eskridge, Jr., & Philip P. Frickey, *Statutory Interpretation as Practical Reasoning*, 42:321 Stan. L.Rev., 1990; Peter C. Schanck, *Understanding Postmodern Thought and its Implications for Statutory Interpretation*, 65 S.Cal. L.Rev. 2505, 2571 (1992); William D. Popkin, *An "Internal" Critique of Justice Scalia's Theory of Statutory Interpretation*, 76:1133 Minn. L.Rev., (1992); William N. Eskridge, *Dynamic Statutory Interpretation*, Harvard University Press (1994); George H. Taylor, *Structural Textualism*, 75 B.U.L.Rev. 321 (1995). While Professor Schanck's ruminations in the Southern California Law Review article on ".... the difference between Derrida's deconstruction and Fish's neopragmatism is their conceptualization of the interpretive process...." (65 S.Cal. L.Rev. at 2571) might be too much for Hamilton and Madison, those simplistic founders of a Constitution *designed* to establish constructual proceduralism to separate governmental powers, my judgment is that the current trend is "back to the future" to reestablish those intended divisions of power to safeguard the liberty of citizens from the arbitrary exercise of power by any branch of the federal government.

ruptcy case administration of a contrary ruling:

The foregoing analysis is, of course, completely consistent with the Code, which in § 726 permits recovery of penalties, damages, and interest as fourth and fifth priorities, ahead only of payment to the debtor, and after all other claims have been fully paid, including claims filed after the bar date. As was noted in *In re National Automatic Sprinkler Co. of Oregon, Inc.*, 63 B.R. 49, 50 (Bankr.D.Or. 1986), the priorities specified in § 726 appear applicable to all unsecured claims, including § 503(b) administrative claims, which are specifically referred to in that section.

It is also completely consistent with § 506(b), which permits the recovery of interest, fees, costs and charges provided for under the parties' agreement; *only* by secured creditors, and then *only to the extent of the collateral.*

This explicit provision in § 506(b) for recovery by a limited class of creditors under limited circumstances is an unmistakable indication that such charges are not recoverable by any other claimant in the absence of an equally explicit provision.

Any other reading of § 503(b) would be the antithesis of the strict and narrow construction that has always been placed on priority treatment of claims in bankruptcy.

Finally, consider the implications of claimants' argument. If claimants are entitled to priority for interest, penalties, and fees on their agreements, we must expect that every other administrative claimant—all merchants dealing with trustees or debtors, as well as attorneys and all other professionals employed in the administration of bankruptcies—will promptly incorporate similar provisions in their contracts.

* * *

The reasoning in this decision is equally persuasive in the context of claims for interest on administrative tax liabilities. If in fact such interest is required to be paid under the statutory language involved, there is no logical reason why it would not extend to all administrative obligations remaining unpaid, not only in chapter 11 cases followed by liquidation but in straight chapter 7 cases as well. That "sea change" in bankruptcy has far-reaching implications for bankruptcy case administration that in my judgment was never contemplated in the enactment of the 1978 Bankruptcy Code and again illustrates the wisdom of avoiding speculation as to policy choices made or unmade by Congress in interpreting explicit statutory provisions.

## *CONCLUSION*

For all these reasons the Court concludes that the government's position is not well taken and that the statutory provisions here involved do not authorize the payment of interest on the administrative tax claim stemming from the chapter 11 stage of this bankruptcy case. This is true in my judgment both with regard to interest accruing during the chapter 11 stage of the case, which was the matter involved in the reported decisions, as well as during the succeeding chapter 7 stage of this case, which is requested by the government here but which is not supported by any explicit decision to that effect by any of the courts.[15]

A separate Order sustaining the trustee's objection to the interest claimed on the chapter 11 administrative tax claim embodied in claim no. 86 shall be entered in accordance with this opinion. The objection with regard to the penalties will be overruled.

15. If the government's legal theory is correct, however, the statutory authorization for interest logically would expressly authorize interest from the initial date of non-payment during the chapter 11 to the end of the case.