**In re COWELL/McCORMACK JOINT VENTURE, Debtor.**

**Bankruptcy No. 82–00185.**

United States Bankruptcy Court, D. Hawaii.

Jan. 11, 1984.

Franklin Tokioka, Roy Kawamoto, Co-Commissioners.

John A. Chanin, Honolulu, Hawaii, for debtor.

Ronald K. Sakimura, John Moon, Gregg Young, Honolulu, Hawaii, for creditor.

Jerrold K. Guben, Honolulu, Hawaii, for creditors' committee.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER RE: CO-COMMISSIONERS' COMPENSATION

JON J. CHINEN, Bankruptcy Judge.

There are two issues before this Court: (1) Whether State appointed co-commissioners should be compensated for their unsuccessful pre-petition efforts to sell a par-

cel of land pursuant to a decree of foreclosure.

(2) If the co-commissioners are deemed entitled to compensation, what should be the source and amount of the compensation.

A hearing was held on June 2, 1983. Present were Roy Kawamoto, Esq., and Franklin Tokioka, the co-commissioners, John Chanin, Esq., attorney for Debtor, Jerrold Guben, Esq., attorney for the Creditors' Committee, John Moon, Esq., attorney for American Savings & Loan Association, Gregg Young, Esq., attorney for Orient Resources and Ronald Sakimura, Esq., attorney for Grosvenor International.

Based on the evidence adduced, the memoranda and records herein and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

On August 18, 1981, Grosvenor International, hereafter "Grosvenor", filed an action in the First Circuit Court, State of Hawaii, Civil No. 65917, to foreclose on its mortgage on the subject property. Grosvenor requested that a commissioner be appointed and that he be authorized and directed to sell the subject property, which "will be used only for the purpose of developing and constructing thereon a condominium project of approximately 195 apartments...."

On September 9, 1981, the state court issued an Interlocutory Decree of Foreclosure which, among other things, (1) appointed Roy Kawamoto and Franklin M. Tokioka as co-commissioners, (2) ordered that the subject property "will be used only for the purpose of developing and constructing thereon a condominium project of approximately 195 apartments" and (3) that the subject property shall be sold at public auction with an upset price of $13,500,000 and that, if there were no bidders at the upset price, the property shall be sold at public auction, without an upset price, within thirty days after the first auction.

The first scheduled auction was held on October 23, 1981 with an upset price of $13,500,000 under the assumption that 195 units were the proper development capacity for the subject property. However, there were no bidders at this auction.

The second auction without an upset price was scheduled by the co-commissioners for November 23, 1981. However, four days prior to the auction, the Debtor applied for a temporary restraining order to stop the auction, alleging "erroneous advertising" on the part of the co-commissioners. Thereafter, an Amended Findings of Fact, Conclusions of Law, Order Granting Summary Judgment and for Interlocutory Decree of Foreclosure was filed on December 21, 1981. The amended form increased the number of possible condominium apartment units from 195 to 300 and expanded the possible use of the property to any use subject to approval by Wailea Development Company, the master owner, and the owner of the adjoining parcel. The auction was rescheduled for March 31, 1983.

Shortly before the rescheduled auction could be held, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. After a protracted proceeding, the subject property was sold at auction for approximately $6,500,000.00.

On July 6, 1982, the co-commissioners filed their Application by Co-Custodians for Interim Payment of Compensation and Costs requesting the sum of $45,524.00.

The creditors object to the co-commissioners' application. They contend that the co-commissioners may be paid only for time spent in preserving the estate and, in the instant case, the co-commissioners did not preserve the estate.

The co-commissioners contend that they performed their duties to the best of their abilities pursuant to the orders of the state circuit court and, that they spent considerable time and money in an effort to auction the subject property.

## CONCLUSIONS OF LAW

11 U.S.C. 503(b)(3)(E) provides that, after notice and a hearing, custodians pursuant to Sec. 543 may be allowed administrative ex-

penses. Sec. 543(c)(2) provides that reasonable compensation may be awarded custodians for services rendered and expenses incurred.

■ There is no dispute that a receiver appointed by a state court is a custodian within the meaning of 11 U.S.C. 101(10)." *In re Left Guard of Madison, Inc.,* 11 B.R. 238 (Bkrtcy.Wisc.1981). Since the duties of a commissioner are substantially similar to those of a receiver, a commissioner is properly considered a custodian under the Bankruptcy Code.

The cases have held that custodians are to be compensated only for services that "preserve, protect or benefit" the estate. *Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1933); *In Re Med General, Inc.,* 17 B.R. 13 (Bkrtcy.Minn.1981).

■ The subject property is a vacant, unimproved lot, and as such there is not much to be preserved or protected. The co-commissioners, however, did advertise the subject property for sale and did contact various entities to emphasize the value of the property. To such extent, the co-commissioners did benefit the estate.

The Bankruptcy Court is a court of equity. 28 U.S.C. Sec. 1481. In the instant case, the proceedings in the state court were initiated by the creditors of Debtor and the co-commissioners were appointed by the state court at the request of the creditors to sell the subject property at auction.

■ It was the creditors who stated that the subject property was subject to a limitation of 195 apartment units. The co-commissioners followed the recommendation of the creditors and the orders of the state circuit court. It is not now appropriate for the creditors to object to the fees requested by complaining that the co-commissioners had followed the orders of the state circuit court.

This Court in *In Re Orchid Island Hotels, Inc.,* 18 B.R. 926 (Bkrtcy.Haw.1982), denied a receiver any compensation for pre-petition services. However, the *Orchid Island* case is distinguishable from the instant case in that, in the former, this Court found that the receiver had failed to perform his duties as required, mismanaged the estate's fund and caused loss to the estate.

In the instant case, the co-commissioners in good faith, relying upon the orders of the state court, diligently expended time and effort to expose the subject property to the public in an attempt to obtain the best price possible. It is not their fault that the Debtor filed its petition in the Bankruptcy Court on the day scheduled for the auction.

■ The Court finds that, under the circumstances of the instant case, the co-commissioners are entitled to a reasonable compensation for services rendered and expenses incurred.

The co-commissioners requested a total sum of $45,524.00 for a total of 185.55 hours for Kawamoto and 153.80 hours for Tokioka at $100.00 per hour. The Court, however, finds that the co-commissioners, in large part, duplicated the efforts of one another. Furthermore, much of the time listed was actually part of overhead expenditures. In particular, times for meetings and messenger services should have been included as overhead. Finally, there were also vague or improperly documented billings included in the timesheets.

Based on a review of the timesheets, the Court approves 120 hours for Kawamoto at $100.00 per hour for $12,000.00, plus $480.00 in excise tax, and 80 hours for Tokioka at $75.00 for $6000.00, plus $240.00 in excise tax. The Court also approves the expenses incurred in the sum of $12,000.00.

The Trustee is hereby authorized and ordered to pay the total sum as part of the administrative expenses.