In re Paul D. WEINSTEIN, Debtor.

United States of America, Appellant,

v.

Jonathan D. Yellin, Trustee, Appellee.

BAP No. MB 99–071.

United States Bankruptcy Appellate Panel
of the First Circuit.

July 28, 2000.

Donald K. Stern, Carina J. Campobasso, U.S. Department of Justice, Washington, D.C., for Appellant.

Craig J. Ziady, Riemer & Braunstein, Boston, MA, for Appellee.

Before GOODMAN, HAINES, CARLO, Bankruptcy Judges.

HAINES, Bankruptcy Judge.

This appeal demands we determine the distributional priority of interest on a Chapter 7 estate's post-petition tax liabilities. The bankruptcy judge held that such interest is entitled to fifth priority under § 726(a)(5).[1] The United States, Internal Revenue Service, contends that the interest should be treated as a first priority administrative expense under §§ 503(b) and 726(a)(1). For the reasons set forth below, we affirm.

### Facts

The bankruptcy court's unchallenged findings paint an uncomplicated factual scene. On May 7, 1992, Paul D. Weinstein filed a voluntary Chapter 7 petition. Paul Grella was appointed trustee. Grella sold estate assets, realizing taxable gain. He did not file yearly fiduciary tax returns. Rather, in 1996 Grella filed returns for

---

1. Unless otherwise indicated, all citations to statutory sections are to the Bankruptcy Re-

four years: 1992, 1993, 1994, and 1995. The IRS accepted the returns as filed. Grella then requested that the estate's tax liability be promptly determined pursuant to § 505(b).

Over and above the principal tax obligation, the estate owed the government interest and penalties on account of late payment. On August 19, 1996, the IRS informed Grella the estate owed $2,430.12 in penalties and $2,184.08 in interest for 1992. Two weeks later it informed him the estate owed penalties of $6,765.31 and interest of $3,345.59 for 1994. At Grella's request, the IRS abated penalties and reduced the interest obligations. On November 6, 1997, it filed a formal "request for payment," seeking a total of $4,593.83 in interest for the 1992 and 1994 tax years.

After some squabbling, and after Jonathan Yellin succeeded Grella as trustee, Yellin proposed paying the IRS's $4,690.09 interest claim as a fifth priority claim under § 726(a)(5). Rejecting the IRS's contention that interest on its post-petition tax claim was entitled to administrative expense (i.e., first priority) treatment under §§ 503(b) and 726(a)(1), and citing § 726(a)(5), the bankruptcy court entered its order assigning it fifth priority. See In re Weinstein, 237 B.R. 4 (Bankr.D.Mass. 1999). The government promptly appealed.

### Discussion

#### 1. Jurisdiction

■ The bankruptcy court's order determining that interest on the administrative tax claim would receive fifth priority distribution under § 726(a)(5) is a final order. See In re Saco Local Development Corp., 711 F.2d 441, 442–46 (1st Cir.1983) (§ 507(a)(4) dispute); see generally Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 646–47 (1st Cir. BAP 1998). We have

---

form Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101, et seq.

jurisdiction to hear the government's appeal. *See* 28 U.S.C. § 158.

### 2. Standard of Review

■ The bankruptcy court's determination of distributional priority is a conclusion of law, subject to our *de novo* review. *See Pension Benefit Guar. Corp. v. Skeen (In re Bayly Corp.)*, 163 F.3d 1205, 1208 (10th Cir.1998); *United States Trustee v. Hirsh (In re Ehrman)*, 184 B.R. 362, 363 (D.Ariz.1995).

### 3. Pertinent Statutory Provisions

■ Section 503 addresses administrative claims. *See* § 503. Administrative claims enjoy first distributional priority among unsecured claims. *See* § 507(a)(1). Section 726(a) sets forth the overall priorities for Chapter 7 distributions.

**§ 503. Allowance of administrative expenses.**

... (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;

(B) *any tax* —

(i) *incurred by the estate*, except a tax of a kind specified in section 507(a)(8) of this title; or

(ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, *penalty*, or reduction in credit relating to a tax of a kind

specified in subparagraph (B) of this paragraph[.]

§ 503(b) (emphasis supplied).

The parties do not dispute that the IRS's tax claim, which springs from gain realized when the trustee liquidated estate assets, is an administrative claim. Moreover, they agree that any penalties associated with those tax claims are entitled to administrative treatment and that interest has accrued on the tax obligation. Only the interest component's distributional priority is at issue here.

Section 507(a) addresses the priorities assigned categories of unsecured claims. Subparagraph (a)(1) designates "administrative expenses allowed under section 503(b) of this title ..." to be paid first (*i.e.*, to receive "first priority") among so-called priority unsecured claims. Subparagraph 726(a)(5), however, declares that "interest" on "any claim paid under paragraph [(a)](1)" will receive fifth priority payment.

The § 726(a) distribution scheme cross-references, *inter alia*, § 507(a):

**§ 726. Distribution of property of the estate.**

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of *claims of the kind specified in, and in the order specified in, section 507 of this title*, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title; or

(C) tardily filed under section 501(a) of this title if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of *interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1),* (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.

§ 726(a) (emphasis supplied).

### 4. The Parties' Positions

The facts may be uncomplicated, but the arguments are not. At first blush the case appears to require no more than a straightforward application of statutory terms: § 503(a)(1)(B) and (C) treat estate tax liabilities and associated penalties as administrative expenses; §§ 507(a)(1) and 726(a)(1) require first priority payment to § 503(a)(1) claims; § 726(a)(5) establishes fifth priority treatment to *interest* accrued on administrative claims.

However, the issue rests in a case law context requiring reflection upon the statute as well as its judicial gloss, a gloss so highly polished, the IRS asserts, that it must prevail.

### a. IRS's Argument

Quoting *Bruning v. United States,* the IRS asserts that "interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt" and that "interest on a tax debt" fits within such a model. 376 U.S. 358, 360, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). Citing *Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), it urges that a taxing entity is "entitled to interest as part of [an] underlying administrative tax claim." (Appellant's Br. at 7.)

It follows, according to the IRS, that historical integration of "interest" with "tax liability" rendered it unnecessary for Congress to include (tax-related) interest as a separate category of liability within § 503(b). In the IRS's view, although Congress did separately identify and treat tax-related penalties in the statute (according them first priority), its "silence" as to interest was simply a recognition that under pre-Code law interest on administrative tax is part and parcel of the bankruptcy estate's tax liability. To read the statute otherwise, it asserts, would be to abrogate the Supreme Court's *Nicholas* holding, something there is no evidence Congress intended to do.

Following these basic tenets of bankruptcy and tax law that make interest an integral part of the continuing debt, it is illogical to suggest, as the Bankruptcy Court's reading of section 503(b) does, that Congress intended that penalties be given a higher priority than interest. Rather it is reasonable to conclude that section 503(b)'s failure to use the word "interest" results from the fact that Congress felt no need to specifically comment on the treatment of interest because it was well established that interest is automatically deemed part of the underlying tax and is always given a higher priority than penalties (absent an

expression of a clear intention to the contrary).

(Appellant's Br. at 8–9.)[2] The IRS claims support for its position in every circuit court opinion addressing the issue to date. (Appellant's Br. at 9–11) (citing *Small Business Admin. v. Preferred Door Co., Inc. (In re Preferred Door Co., Inc.)*, 990 F.2d 547 (10th Cir.1993); *United States v. Flo–Lizer, Inc. (In re Flo–Lizer, Inc.)*, 916 F.2d 363 (6th Cir.1990); *United States v. Ledlin (In re Mark Anthony Constr. Inc.)*, 886 F.2d 1101 (9th Cir.1989); *United States v. Cranshaw (In re Allied Mechanical Servs., Inc.)*, 885 F.2d 837 (11th Cir. 1989); *United States v. Friendship College, Inc. (In re Friendship College, Inc.)*, 737 F.2d 430 (4th Cir.1984)).

### b. Trustee's Argument

The trustee contends that the bankruptcy court correctly applied the statute. That application, he contends, was and should be a straightforward one, pinned precisely to the Code's express provisions. In his view, the lower court correctly concluded that the "tax and interest/part and parcel" gloss the IRS urges upon § 503(b)(1)(B) has no proper place in the statute's interpretation. Indeed, citing *In re Hospitality Associates of Laurel*, 212 B.R. 188 (Bankr.D.N.H.1997), he argues that the gloss obscures, rather than brightens, the statute's meaning; that the Code's plain meaning compels the result the bankruptcy court reached in this case.

### 5. Analysis

The IRS's primary argument is founded on the following fundamental tenets: (1) the Code does not expressly address payment priority for interest on administrative tax claims; (2) given the pre-Code state of the law, and because there is no evidence demonstrating a legislative intention that enacting the Code would change the law, interest on administrative tax

claims must be accorded first priority payment. As part of the first premise, the government asserts that, to the extent the Code assigns a payment priority for interest on administrative taxes, its provisions do not operate except in instances when the case has been converted to Chapter 7 from one of the reorganization chapters (*e.g.*, Chapter 11).

To begin, we recall the maxim that statutory interpretation begins with "the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). *See also New Hampshire Hemp Council, Inc. v. Marshall*, 203 F.3d 1, 6 (1st Cir.2000) (statutory language is the starting point, and usually the ending point, of statutory interpretation); *Granite State Chapter v. F.L.R.A.*, 173 F.3d 25, 27–28 (1st Cir.1999) (court must give full effect to terms selected by Congress); *accord e.g.*, *Griffin v. Kraft Gen. Foods, Inc.*, 62 F.3d 368, 372 (11th Cir.1995); *United States v. Southern Management Corp.*, 955 F.2d 914, 920 (4th Cir.1992); *Preterm, Inc. v. Dukakis*, 591 F.2d 121, 128 (1st Cir.1979). Statutes should be applied as they are written, with limited exceptions, that is, only if straightforward application of the statute's terms lead to an "absurd" result, *see, e.g.*, *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *A.M. Capen's Co., Inc. v. American Trading and Prod. Corp.*, 202 F.3d 469, 473 (1st Cir.2000); *Sullivan v. CIA*, 992 F.2d 1249, 1252 (1st Cir.1993), or if the statute's clear intention is hobbled by a scrivener's error, *see Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649, 653–54 (1st Cir.1997); *Symons v. Chrysler Corp. Loan Guar. Bd.*, 670 F.2d 238, 242 (D.C.Cir.1981). If the statute's terms are ambiguous, resort to extra-textual interpretive materials is appropriate. *See, e.g.*,

---

**2.** The IRS cites 26 U.S.C. § 6601(e), which dictates that the IRS assess and collect interest "in the same manner as taxes," *id.* § 6601(e)(1), with the exception added in

1986 (after enactment of § 503(b)) that interest may be abated in limited circumstances *see id.* § 6601(c).

*A.M. Capen's Co., Inc.,* 202 F.3d at 473; *Inmates of Suffolk County Jail,* 129 F.3d at 654.

    Section 503(b) establishes that tax obligations incurred by the estate, *see* § 503(b)(1)(B), and any associated penalties, *see* § 503(b)(1)(C), are paid as a first priority administrative expense. Section 507(a)(1) provides that administrative expenses are first among the priority unsecured claims, and § 726(a)(1) provides that priority claims must be paid before general unsecured claims receive distributions in a Chapter 7 case. True enough, neither § 503(b) nor § 507(a)(1) makes mention of interest on tax claims. Is the Code ambiguous on that point as a result? No. Section 726(a), which sets forth the overall Chapter 7 distribution scheme, and which cross-references § 507, expressly provides that "interest" on "any claim" paid under § 726(a)(1) is to be paid as a fifth-tier dividend, after, *inter alia,* timely and untimely filed general unsecured claims. *See* § 726(a)(5). The conclusion that interest accrued on a Chapter 7 estate's tax obligations will be paid fifth appears unescapable.

### a. § 503: Ambiguity and the Eye of the Beholder

The IRS, and the case authorities assembled in its corner, begin a long and winding interpretive journey with the unremarkable observation that § 503(b) fails explicitly to mention interest on estate tax liabilities. They next make the equally unremarkable point that § 503(b)'s use of the word "including" signals that the ad-

ministrative expense descriptions that follow it is non-exclusive. With those points made, they declare the statute ambiguous on the point of how interest that accrues on administrative tax claims is to be treated. From there, they strike out into a thicket of legislative history and pre-Code law. *See, e.g., In re Flo–Lizer, Inc.,* 916 F.2d at 365–66; *In re Mark Anthony Constr., Inc.,* 886 F.2d at 1104–08; *In re Allied Mechanical Servs., Inc.,* 885 F.2d at 839; *In re Friendship College, Inc.,* 737 F.2d at 431–32.

    What is remarkable about the line of argument is that it utterly fails to address two telling aspects of the Code's administrative priority and distribution provisions. First, it provides no explanation why Congress would, within § 503(b)'s non-exclusive list, expressly treat "any tax . . . incurred by the estate," § 503(b)(1)(B)(i), and "any fine, penalty, or reduction in credit" relating to such a tax, § 503(b)(1)(C), but ignore completely interest on administrative tax obligations. We recognize that the non-exclusive introductory term "including" leaves the door open to supplement any statutory listing with additional items consistent with the statute's purpose. *See, e.g., Berniger v. Meadow Green–Wildcat Corp.,* 945 F.2d 4, 7–8 (1st Cir.1991). But it is quite another thing to add to such a list subcategories which the legislature has expressly addressed and sorted out for different treatment in related statutory provisions. *See cf. Chicago v. Environmental Defense Fund,* 511 U.S. 328, 334–38, 114 S.Ct. 1588, 128 L.Ed.2d 302 (1994).[3]

---

**3.** *Chicago* recites the presumption that Congress acts with intention and purpose when it includes particular language in one section of the statute and omits this language in another. *See* 511 U.S. at 338, 114 S.Ct. 1588. *See also Eastern Enters. v. Chater,* 110 F.3d 150, 154–55 (1st Cir.1997) (analyzing successor liability under the Coal Act, concluding that treatment of the question of successor liability in two other sections of the Act is a "patent indication that Congress did not intend to deal with the question of successor liability" in the section of The Coal Act at issue);

*Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc.,* 227 B.R. 788, 793 (E.D.Tex.1998) (in a dispute concerning the right to appear under § 1109(b) remarking that it is "difficult to believe that Congress intended to invoke by omission in § 1109(b) what it had included by express language in § 1109(a)").

  Ours is a more inescapable conclusion than that reached in *Chicago.* The *Chicago* petitioner argued that the Court should read into a provision of the Resource Conservation and Recovery Act (RCRA) that excluded resource

The government's rejoinder is only that its proffered interpretation reflects a long-held, irrefutable verity that Congress showed no intention of overruling.[4] That answer is unsatisfactory. It posits the conclusion as the rationale. It ignores § 726(a)(5) altogether. And that leads us to our second point.

Section 503(b)(1)(B)(i) might stretch, or be made to stretch, as far as the government urges if it stood alone. But it does not. It is but one of several Code sections that set distributional priorities in Chapter 7 cases. Section 726(a)(5) addresses interest on administrative claims explicitly, assigning them fifth distributional priority. Since §§ 503, 507, and 726 operate together, cross-referencing one another, we cannot fathom how it may be effectively ignored in the analysis.[5] In other words, whether § 503(b) addresses interest or not is beside the point. The important query is whether *pertinent Code provisions* address the distributional priority for interest on administrative claims. And the answer is "yes."

Without differentiating among administrative claims of various ilks (*e.g.*, tax claims, claims for services, claims for goods, commissions), § 726(a)(5) declares, in no uncertain terms, that property of the Chapter 7 estate shall be distributed "fifth" (*i.e.*, after § 507 administrative claims; timely (or excusably late) unsecured claims; tardy unsecured claims; and noncompensatory pre-filing fines, penalties, forfeitures, and punitive damages) "in payment of interest at the legal rate from the date of the filing of the petition, on *any* claim paid under paragraph (1), (2), (3), or (4) of this subsection [.]" § 726(a)(5) (emphasis supplied).

The government urges that § 726(a)(5) applies only in limited circumstances, when there has been a conversion to Chapter 7 from a rehabilitation chapter (*e.g.*, Chapter 11), and thus operates only to limit the priority that interest accruing on reorganization-stage liabilities may claim *after conversion* to Chapter 7. Thus, although administrative expense obligations incurred during reorganization will accrue interest (assertedly to be paid as a first priority, *see, e.g., Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.),* 19 F.3d 1371, 1376–77 (11th Cir.1994)), such post-conversion interest as may accrue may garner only fifth priority.

That proposition is unsound. First and foremost, § 726(a)(5)'s language

recovery facilities from regulation under one subchapter an exclusion for ash generated in these facilities. The petitioner contended, in a vein similar to the part-and-parcel reasoning of the IRS before this panel, "that the practical effect of the statutory language is to exempt the ash by virtue of exempting the facility." *Chicago,* 511 U.S. at 335, 114 S.Ct. 1588. The Court rejected this argument, and in doing so observed that the facility exemption provision omitted "generation" from its "catalog" of waste related activities while the generation of waste *is* treated in a separate exemption in the RCRA. *Id.* at 335–38, 114 S.Ct. 1588. Unlike the provisions of RCRA juxtaposed in *Chicago,* the sections of the Code we address are not only part of the same statutory scheme they are each sections we must apply to resolve this dispute.

4. That "verity," the "tax and interest/part and parcel" concept is addressed in more detail below.

5. Inexplicably, none of the circuit court cases addressing distributional priority for interest on administrative tax claims wrestles with § 726(a)(5)'s import. Indeed, among them only three of the five mentions § 726 and they do so only in a general, cursory fashion. *See In re Flo–Lizer, Inc.,* 916 F.2d at 366 (observing that § 726 is one of the sections of the Code that demonstrates that Congress was not averse to postpetition interest by dint of its provision for interest on unsecured claims in a solvent estate); *In re Mark Anthony Constr., Inc.,* 886 F.2d at 1103 ("[T]here is no dispute that, under the rules established by 11 U.S.C. § 726, and the priorities mandated by 11 U.S.C. § 507, the characterization of the post-petition interest at issue here as an 'administrative expense' would give [it] first priority status."); *In re Allied Mechanical Servs., Inc.,* 885 F.2d at 838 & n. 1 (stating that "[s]ection 726, [sic] instructs that in a Chapter 7 liquidation the corpus of the estate is distributed according to the priorities of section 507," quoting only subsection (a)(1) of § 726).

and context do not limit it to post-conversion Chapter 7 cases. Its location in Chapter 7 of the Code makes it applicable to *every* Chapter 7 case. *See* § 103(b). It expressly states that it applies to *any* administrative claim. And it mentions "conversion" nowhere.[6]

That § 726(a)(5) provides that such fifth-priority interest is to be paid "at the legal rate from the date of the filing of the petition" does not dictate that we read the subsection as applying to converted Chapter 7 cases only. The "date of the petition" is not a phrase keyed to the consequences of conversion.[7] And there may well be circumstances where a creditor may assert administrative expense priority for obligations that arose pre-petition.[8] Thus, the sensible reading of § 726(a)(5) is that interest on administrative claims paid under § 726(a)(1) accrues from the date the petition was filed or if incurred post-petition, sensibly, from the date the claim arose.[9] This is "by far the most natural reading" of § 726(a)(5). *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, —— U.S. ——, 120 S.Ct. 1942, 1948, 147 L.Ed.2d 1 (2000).

Moreover, the argument proves too much. If § 726(a)(5)'s operation were limited to post-conversion liquidations, the door would be open for *all* administrative claims (whether for taxes, trash haulers, or auctioneers), in every Chapter 7 case, to demand a first priority payment on any interest accruing on their claims.[10] The critical distinction that the government draws between *tax* claims and all other claims under the *Nicholas* doctrine, discussed below, evaporates.

The government's position is that § 503(b)(1)(B) *means what it does not say*[11] and that § 726(a)(5) *does not mean*

---

6. Congress has demonstrated its understanding of what conversion means, when it may take place, and its effect on case administration. When a Code section is intended to apply in conversion situations the term is used. *See, e.g.,* §§ 348, 706, 1112, 1208, 1307; *see also supra* note 3.

7. Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an *order for relief* under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does *not effect a change in the date of the filing of the petition,* the commencement of the case, or the order for relief.
   § 348(a) (emphasis supplied). Subsections (b) and (c) each address how conversion may relate to the "order for relief" in certain circumstances. They are not concerned with "the date of the filing of the petition." .

8. In mill-run Chapter 7 cases there may be pre-filing expenses that nevertheless qualify as administrative claims. *See, e.g., In re Lake Region Operating Corp.,* 238 B.R. 99 (Bankr. M.D.Pa.1999) (state court appointed receiver's claim arising from pre-petition services rendered operating the debtor's business entitled to administrative status, but no such treatment for fees and expenses incurred in fighting involuntary petition); *In re Cablehouse, Ltd.,* 63 B.R. 685 (Bankr.S.D.Ohio 1986) (utility service provider entitled to administrative claimant status for pre-peti-

tion/state receivership utility services); *In re Cowell/McCormack Joint Venture,* 36 B.R. 652 (Bankr.D.Haw.1984) (state court appointed co-commissioners entitled to administrative claimant status for services rendered in their unsuccessful efforts to auction property of the debtor pre-petition); *In re North Port Dev. Co.,* 36 B.R. 19 (Bankr.E.D.Mo.1983) (pre-bankruptcy services rendered by counsel for state court receiver allowed as administrative expense); *In re Gomes,* 19 B.R. 9 (Bankr.D.R.I. 1982) (state court wage earner receiver/ attorney acted as a custodian and was entitled to have his fees and expenses treated as an administrative expense).

9. Could one reasonably argue that § 726(a)(5) should be routinely disregarded, or limited by conditions mentioned nowhere in its text, rather than this way?

10. *See In re Colortex Indus., Inc.,* 19 F.3d 1371 (interest on trade debt treated identically to interest on tax obligations).

11. It states:
   The Bankruptcy Court, like the court in *In re Hospitality Associates of Laurel,* read section 503(b)'s failure to contain the word "interest" to mean that interest was not included within the purview of section 503(b). The United States submits that a reading exactly opposite from this reading of section 503(b)(1) is the correct reading of the statute....

*what it says.*[12] How such a topsy-turvy take on statutory terms has gained widespread acceptance is a bit of a wonder. We can not accept a speculative construction (even though embraced by respected circuit courts) that stands the statute on its head.[13]

Finally, the government asserts that to accord first payment priority to administrative tax penalties, as § 503(b)(1)(C) does, while providing interest with fifth priority under § 726(a)(5) makes "no sense," particularly in light of a policy favoring prompt payment of all tax obligations, including those of bankruptcy estates. *See In re Flo–Lizer, Inc.,* 916 F.2d at 366; *In re Rocky Mountain Refractories,* 205 B.R. 307, 313 n. 14 (Bankr.D.Utah 1996). We have no answer for that, except to say that penalties operate as a unique deterrent to the avoidance of tax payments and to note, as the Supreme Court recently did:

> In any event, we do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome—if what [appellant] urges is that—is a task for Congress, not the courts.

*Hartford Underwriters Ins. Co.,* —— U.S. at ——, 120 S.Ct. at 1951.

(Appellant's Br. at 6.)

**12.** The IRS argues:
Section 726(a)(5) provides for the "payment of interest at the legal rate from the date of the filing of the petition, on *any* claim paid under paragraph (1), (2), (3), or (4) of this subsection." The Bankruptcy Court, relying on *In re Hospitality Associates,* interpreted this section to mean that *all* interest paid on an administrative claim under subsection (1) must be paid under subsection (5) and not included as part of the underlying administrative claim.
(Appellant's Br. at 12) (emphasis on "any" supplied; emphasis on "all" in government's brief).

### b. Tax and Interest

With all that said, it seems plain enough that the pertinent statutory provisions dictate the disposition of this dispute. The concept that interest is "part and parcel" of an administrative tax claim, the government's keystone argument, has been considered a sufficiently weighty proposition to distract most courts from the statutory text. The precept is supposedly sourced in pre-Code Supreme Court pronouncements. We will, then, consider that proposition at some length, because only if one accepts it as fundamental, can one overlook § 503(b)(1)(B)'s failure to include tax-related interest in its specification of tax claims entitled to administrative (first-tier) distributional priority, ignore § 726(a)(5)'s express treatment of interest on administrative claims, and leap to the conclusion that "tax" means "tax plus interest" under current law.

Courts, including the aforementioned courts of appeal, that have embraced the governments gospel have universally traced the genesis of the § 503 "tax" means "tax plus interest" tenet to *Nicholas,* 384 U.S. 678, 86 S.Ct. 1674. *Nicholas,* a case decided under the Bankruptcy Act did not, however, etch that tenet in stone.

*Nicholas* considered interest accruals on taxes incurred during Chapter XI arrangement proceedings, before conversion to liquidation proceedings. The Court observed that, in theory, tax obligations could arise

**13.** We wonder that other courts have concerned themselves so much with extra-textual sources when applying the provisions at hand. The late Judge Yacos, wrestling with the same Code sections, analyzing similar issues, and confronting the case law, observed:

> The case presents an important issue of statutory construction when the "plain meaning" of the statutory provisions in question is clear unless clouded by an "ambiguity" that may be real or may stem only from a conclusory mote in the eye of the judicial beholder.

*In re Hospitality Assocs. of Laurel,* 212 B.R. at 189.

in any of three of the case's segments: (1) before bankruptcy, (2) during the period of arrangement, and (3) after conversion. *See id.* at 686, 86 S.Ct. 1674. It observed:

> [I]n a case concerning taxes incurred during the first period—that is, before the filing of a petition for a Chapter XI arrangement—the Court has summarily affirmed a judgment holding that the accumulation of interest must be suspended as of the date the Chapter XI petition was filed. Where, as in the present case, the taxes have been incurred in the Chapter XI proceeding itself, application of the principle enunciated in *Sexton* and *Saper* permits interest to accrue throughout the arrangement proceeding; the principle requires only that the accumulation of interest be suspended once a petition in bankruptcy is filed.
>
> The allowance of interest on Chapter XI debts until the filing of a petition in bankruptcy promotes the availability of capital to a debtor in possession and enhances the likelihood of achieving the goal of the proceeding, the ultimate rehabilitation of the debtor. Disallowance of interest on Chapter XI debts might seriously hinder the availability of such funds and might in many cases foreclose the prospect of the debtor's recovery. No such significant detriment to the viability of a Chapter XI proceeding is imposed by the suspension of interest once the proceeding enters the liquidating bankruptcy period, since potential creditors can readily adjust their interest rates to accommodate their prognosis of the particular debtor's chances of rehabilitation.
>
> The division of the proceedings in the present case into three separate periods defining the permissible *accumulation* of interest is supported by the threefold hierarchy of priorities for tax claims under the Bankruptcy Act. Taxes incurred in the pre-arrangement period must be content with a fourth priority under § 64a(4) of the Bankruptcy Act.

> On the other hand, taxes incurred during the arrangement period are expenses of the Chapter XI proceedings and are therefore technically a part of the first priority under § 64a(1). The final sentence of that section, however, subordinates arrangement expenses within that priority to the expenses of the superseding bankruptcy administration. Tax claims incurred during Chapter XI proceedings are therefore in fact junior to claims for expenses incurred in subsequent bankruptcy proceedings. The suspension of interest on taxes incurred during the arrangement period as of the date a bankruptcy petition is filed thus corresponds to the suspension of interest on pre-arrangement taxes when a Chapter XI petition is filed. Moreover, the suspension of interest extricates the superseding trustee from a serious dilemma he would otherwise face, whether to pay subordinated Chapter XI tax claims prematurely in order to forestall the accrual of interest, or to increase the burden on the bankrupt estate by allowing the interest to accumulate.

384 U.S. at 686–88, 86 S.Ct. 1674 (footnotes omitted) (emphasis supplied). The Court went on to hold that although the tax claims at issue arose during the debtor's arrangement period, they did not become payable until *after* the case converted and, therefore, there was no period within the arrangement proceedings when interest could accrue. *See id.* at 689–90, 86 S.Ct. 1674.

*Nicholas,* is, then, fundamentally about interest *accrual* not interest payment *priority.* Although the Court's dictum theoretically posits that interest accrued on reorganization-era tax obligations would receive first priority as part of the administrative tax claim, *see id.* at 687–91, 86 S.Ct. 1674, it also opined that such interest would *cease* accruing upon conversion to Chapter 7, *see id.* at 682, 686, 86 S.Ct. 1674. How *Nicholas*'s teaching dictates the result in a Chapter 7 case in which

there has been no conversion is problematic, although one could play out the opinion's theoretical musings to conclude that interest accruing on administrative tax claims is embodied in the underlying claim—at least to the extent it accrued before the case converted to liquidation mode.[14]

This is well and good, and might bode well for the government's argument but for the fact that the *Nicholas* holding was, as this court's must be, tied to the terms of the bankruptcy statute extant at the time.[15]

What is more, *Nicholas* repeatedly emphasized the similarities between tax claims and other, mill run, unsecured administrative claims. *See id.* at 682–83 & n. 10, 86 S.Ct. 1674; *see also Bruning,* 376 U.S. at 360, 84 S.Ct. 906 ("[I]nterest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt. Interest on a tax debt would seem to fit that description."); *In re Colortex Indus., Inc.,* 19 F.3d 1371 (determining that interest on pre-conversion trade debt deserves same treatment as pre-conversion tax debts, following reasoning of circuit cases awarding tax claim first priority interest). However, the governments "part and parcel" chant

ignores the implications of that observation, urging us instead (and without statutory direction to do so) to treat tax claims *sui generis.*[16]

A spate of cases decided under the Bankruptcy Code, have read *Nicholas* as the government would have us read it and have readily leapt to conclude that administrative tax, and the interest accruing upon it, are one and the same for priority purposes.

For example, in *In re Allied Mechanical Services, Inc.* the Eleventh Circuit considered that § 503(b)'s interpretation required consideration of pre-Code law and legislative history. *See* 885 F.2d at 839.[17] It treated the issue as one of "legislative silence" and stated:

> The statute does not explicitly mention the interest owed on post-petition tax liability. Because section 503(b) says that administrative expenses *"including"* taxes and penalties are allowable, the statute by its terms does not resolve the issue before us: "including" suggests that the list is not exhaustive; therefore, interest may (or may not) be an administrative expense. Where the statute is ambiguous on its face, we must turn to interpretive means.

> As the bankruptcy court observed, the Senate version of what ultimately be-

---

**14.** In this regard, at least, it is plain that enactment of § 726(a)(5) *changed* pre-Code law. Under the Code, interest will accrue during the liquidation period, and will be paid as a fifth priority.

**15.** *See id.* at 682 n. 10, 86 S.Ct. 1674 (discussing historical development of § 64a of the Bankruptcy Act of 1898); *id.* at 687 n. 17, 86 S.Ct. 1674 (quoting the version of § 64a applicable to the *Nicholas* determination).

**16.** We acknowledge that first priority treatment for interest on the estate's administrative tax obligations would be, as the government asserts, consistent with 26 U.S.C. § 6601(e), which provides that interest "shall be assessed, collected, and paid in the same manner as taxes." *Id.* § 6601(e)(1). But how that could affect our reading of the interrelated Code sections that expressly assign such interest fifth priority is unclear. *See United States v. Reorganized CF & I Fabricators of*

Utah, Inc., 518 U.S. 213, 219–20, 116 S.Ct. 2106, 135 L.Ed.2d 506 (1996) (observing that Congress has included references in certain provisions of the Bankruptcy Code to other federal statutes, including the tax code, when it intends to tether the Code to other legislation, stating that it is "significant" when Congress does not include such a cross reference). Indeed, we see the IRS provision as yet another sign that the government is not unlike other creditors—it wants to be paid, in full, with interest, sooner rather than later.

**17.** *In re Allied Mechanical Services, Inc.* is distinguishable from the case before us on another important point: it addressed Chapter 7 distributional priority of taxes and interest incurred and accrued during a pre-conversion period when the debtor operated under Chapter 11. *See id.,* 885 F.2d at 838.

came section 503(b) specifically included the language "any taxes, including·interest thereon." The House version, however, was silent. Because Congress had the issue of post-petition tax liability before it, the bankruptcy court concluded that Congress, by omitting the language "interest thereon," meant that the interest should *not* be included as an administrative expense.

. . . .

Under prior case law, interest on post-petition tax liability would be treated as a first priority administrative expense, although, like the current statute, the language of the prior statute was not explicit. *See Nicholas v. United States,* 384 U.S. 678, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966). In essence, interest on the post-petition tax liability was treated as part of the underlying tax liability itself. Thus, Congress may have reasoned that it was unnecessary to specify that post-petition interest would receive administrative priority.

Absent some indication from Congress that it intended to change the priorities, we believe it proper to continue to construe the statute as giving priority to the Internal Revenue Service's claim for interest on post-petition tax liability. It would be inconsistent to give priority to a penalty associated with a tax liability but not give priority to the interest on that same tax liability.

885 F.2d at 838–39 (footnote omitted).

The faults in *In re Allied Mechanical Services, Inc.'s* logic are manifold. Reading *Nicholas* as establishing pre-Code law

*dictating* first priority for such interest is, simply stated, wrong. And one must ignore § 726(a)(5) altogether (which the court did) to conclude that the issue is cloaked in "legislative silence" or that Congress failed to give "some indication" of how the Code's priority scheme would treat interest on administrative tax liabilities. How could congressional action omitting language that would dictate first priority and inserting language in § 726(a)(5) that dictates fifth priority be interpreted as a signal that first priority treatment was the result it intended? [18]

The Ninth Circuit in *In re Mark Anthony Construction, Inc.* and the Sixth Circuit in *In re Flo–Lizer, Inc.* (following *In re Mark Anthony Construction, Inc.*) concluded that § 503(b)'s failure to mention interest on tax claims was inconclusive and that the section's use of the word "including" as a preface to its list of administrative claims left the door open to including interest on administrative taxes as a first priority. *See* 916 F.2d at 365; 886 F.2d at 1106. Pursuing the "proper" construction of § 503(b) the Ninth Circuit concluded that the legislative history and the state of pre-Code law establishes congressional intent to include interest with principal in the administrative priority category. *See In re Mark Anthony Constr., Inc.* 886 F.2d at 1105–08. The Sixth Circuit followed suit. *See In re·Flo–Lizer, Inc.,* 916 F.2d at 365–66.[19] Both cases ignore § 726(a)(5) altogether.

The rationale of the Fourth Circuit's *Friendship· College, Inc.* is similarly flawed. It, too, held that interest on ad-

---

18. The court conceded that the question was "a close one." *Id.* at 839. One wonders how close the call would have been had the court confronted and wrestled with § 726(a)(5)'s content.

19. *In re Mark Anthony Construction, Inc.* analyzes § 503(b)'s legislative history at length, emphasizing the wrongheadedness of cases that arrived at conclusions different from its own. But its resort to legislative history was premised on its view that the Code is *silent* on treatment of interest on administrative claims

and that the inquiry must therefore concentrate on discerning whether Congress intended to abrogate what the court took to be the "holding" of *Nicholas.*

The parties before both the Ninth and the Sixth Circuits had agreed that the pre-code rule of *Nicholas* would dictate first priority treatment of the interest. *See In re Flo–Lizer, Inc.,* 916 F.2d at 365; *In re Mark Anthony Constr., Inc.,* 886 F.2d at 1103. Thus, neither court critically examined that proposition.

ministrative tax obligations was entitled to first distributional priority. It, too, ignored § 726(a)(5) completely. *See* 737 F.2d at 433 ("Interest, on the other hand, is not mentioned by the *Code.*").

Finally, *In re Preferred Door Co., Inc.* did not address Chapter 7 distributions. Rather, it considered whether a Chapter 11 debtor could subordinate interest and penalties on post-petition tax liabilities as part of its reorganization plan, notwithstanding § 1129(a)(9)(A)'s requirement that they be paid in full, in cash, on the plan's effective date. The Tenth Circuit accepted the holdings of *In re Flo–Lizer, Inc.* and *In re Mark Anthony Construction, Inc.* without analysis and held that the bankruptcy court correctly determined that it lacked authority to reclassify a category of claims, over objection, in the face of a controlling statutory mandate. *See id.* at 551.[20]

Thus, we conclude that the "tax and interest/part and parcel" proposition, although accepted at face value time and again, is not a bedrock premise of bankruptcy law. It certainly lacks the heft necessary to outweigh and override the Code's clear text.[21]

### Conclusion

For these reasons, the bankruptcy court's determination that accrued interest on the estate's administrative tax debt be paid in fifth priority pursuant to § 726(a)(5) is AFFIRMED.

---

20. The *In re Preferred Door Company, Inc.* holding has been confirmed by the Supreme Court. *See Reorganized CF & I Fabricators of Utah, Inc.,* 518 U.S. at 229, 116 S.Ct. 2106 (bankruptcy court had no authority to reorder via § 510(c) equitable subordination priorities enacted in the Code); *see also Raleigh v. Illinois Dep't of Revenue,* — U.S. —, 120 S.Ct. 1951, 1957, 147 L.Ed.2d 13 (2000) ("Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides."). We note that the *In re Preferred Door Company, Inc.* debtor apparently needed to subordinate tax penalties and tax interest to present a feasible plan. As discussed above, penalties assessed on an estate's tax obligations are expressly accorded first priority status under § 503(b)(1)(C). Absent the class's acceptance of different treatment, cash payment of such taxes and penalties is required on the plan's effective date, as well. *See* §§ 507(a)(1), 1129(a)(9)(A).

21. That *Nicholas* did not establish so bright and everlasting a proposition as the government would have it further undercuts arguments that posit great, or even any, significance in the fact that the Code's legislative history does not express an intention to overrule that case. *See In re Hospitality Assocs. of Laurel,* 212 B.R. at 195–96.